## 35291. WILLIAMS v. THE STATE.

UNDERCOFLER, Presiding Justice.

Horace Thomas Williams appeals his conviction and life sentence for felony murder. We affirm.

1. A rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560) (1979). Two eyewitnesses placed Williams, accompanied by Randy Dixon, near the front desk of a motor hotel where a night clerk was robbed, shot and killed. These witnesses had been playing pool in a nearby room when Williams and Dixon stopped at the door and Dixon inquired, "Who's winning?" Seconds after the two men left, the witnesses heard a groan, then a gunshot, and they ran to the front desk where they found the victim lying on the floor. One of the witnesses, a daughter of the deceased, ran outside where she saw Williams get behind the driver's seat of a red car with a black stripe on the rear. She testified he appeared to be arguing with Dixon. She kicked the car until restrained by Andy Patal, the motel manager, who drew her to safety and got the tag number as the car drove away. The car was owned by Williams' wife and traced to her. While Mountain View police interviewed Mrs. Williams, appellant called the station and told the police chief he didn't want his wife to suffer for something he had done. Two days later, accompanied by his wife and a retained attorney, he surrendered to police. He was arrested, given the Miranda warnings in the presence of his attorney, and with his consent, Williams made a statement on October 12, 1978. He said he and Dixon stopped at the motel to purchase cigarettes; that Dixon committed the crimes; that he had no knowledge that Dixon would commit the crimes; that he and Dixon left the motel together and threw away Dixon's gun. On October 16, 1978, he was interviewed a second time. Following Miranda warnings, and a brief discussion wherein Williams said he had no trouble with the October 12 statement and that he had a retained counsel whom he

named, Williams was asked if he wanted to talk to the investigators about the incident of October 7, and "he started right in telling us about it." This statement reiterated that appellant did not know Dixon was going to commit the robbery. On October 17, without further reference to Miranda, he was interviewed at 9:30 a.m. and again around 1:00 p.m. During these interviews, Williams at first denied his participation, then confronted with a .45 caliber pistol he had hidden following the robbery and murder, he admitted his active participation and sharing in the money stolen. The eyewitnesses positively identified Williams and Dixon in a subsequent line-up and in court. The contents of Williams' statements were introduced at trial through testimony of the investigating officer following a Jackson-Denno hearing concerning the statement of October 17. The court found the confession voluntary and submitted this question to the jury. Physical evidence indicated that Randy Dixon shot and killed the victim. Williams testified in his defense that his presence was unplanned and that the .45 pistol and ammunition he had hidden in plastic bags in a storm sewer was put there because he was frightened and didn't have "no papers on it."

2. Williams' indictment on Count 1 was not nol prossed. A single indictment in two counts — armed robbery and felony murder — was returned against Dixon and Williams. Following a grant of severance, Dixon pled guilty to Count 2 — felony murder — and was sentenced to life. At Dixon's sentence hearing, the state filed a *nolle prosequi as to Dixon on Count 1*. Williams was subsequently tried and convicted on *both* counts. Appellant's motion for new trial challenged the legality of the verdict, arguing when Count 1 was nol prossed against Dixon this effectively terminated this count against Williams as well. The court in its order denying the motion for new trial concurred, but held such error in the indictment was harmless because the armed robbery "merged" into Count 2, the felony murder. Pretermitting the question of merger, we conclude there was no termination of Count 1 against Williams. "Nolle Prosequi. Lat. In practice, a formal entry upon the record by . . . the prosecuting officer in a criminal action . . . by

which he declares that he 'will no further prosecute' the case, either as to some of the counts, or some of the defendants, or altogether." Black's Law Dict., 4th Ed., p. 1198. A separate written order on the nolle prosequi was entered as to Dixon showing clearly that Count 1 of the indictment was abandoned only as to him. *Lamp v. Smith,* 56 Ga. 589 (1) (1876); *Martin v. State,* 10 Ga. App. 795 (1) (74 SE 304) (1912); and Dealy v. United States, 152 U. S. 539 (1) (1894) cited by appellant are inapposite.

3. It was not error to permit the Chief of the Mountain View Police to testify as to his conversation with Williams' wife while investigating the case, where, as here, a proper instruction limited the purpose to explain conduct and ascertain motives. Code Ann. § 38-302; *Brown v. State,* 240 Ga. 274, 275-276 (4) (240 SE2d 63) (1977); *English v. State,* 234 Ga. 602, 604-605 (4) (216 SE 2d 851) (1975).

4. (a) Appellant contends the trial court erred in admitting statements obtained from him on October 17 involuntarily by coercion and without proper advisement of his constitutional rights, citing Miranda v. Arizona, 384 U. S. 436. Williams testified he was awakened early, was sleepy and suffering from a head cold when he made the incriminating statements. He also testified he was afraid because he was handcuffed, kept behind locked doors when questioned, and he was threatened. The state rebutted this testimony showing appellant was brought down around 9:30 a.m. and interviewed for twenty to thirty minutes, that he did not appear sleepy or that he was suffering from a cold. This testimony also showed the interrogation room door was closed for privacy and that appellant's handcuffs were removed while he was in the office — the same office in which he had previously been questioned the day before. No promises were made and he was not threatened in any manner. The jury was properly charged to make an independent determination that the confession was voluntary before considering it. We conclude the state met its duty to show by the preponderance of the evidence that the confession was voluntary under the circumstances of this case. *Pierce v. State,* 235 Ga. 237, 239 (219 SE2d 158) (1975), citing Lego v. Twomey, 404 U. S. 477 (1972); *Thomas v. State,* 233 Ga.

237, 240 (210 SE2d 675) (1974).

(b) We also conclude the state was under no duty to repeat the Miranda warnings given the day before where, as here, the interviews were part of a continuing interrogation. *Gregg v. State,* 233 Ga. 117, 124 (210 SE2d 659) (1974), affd. 428 U. S. 153 (1976), reh. den. 429 U. S. 875 (1976); *Watson v. State,* 227 Ga. 698 (1) (182 SE2d 446) (1971).

(c) Though not argued by appellant, we also conclude that appellant was properly advised under Miranda of his constitutional right to the presence of retained counsel during these interrogations on October 17 and intentionally abandoned the privilege under the circumstances of this case. See, e.g., Johnson v. Zerbst, 304 U. S. 458, 464 (1938).[1] The Miranda warnings do not mandate that a specific question naming retained counsel be asked or asking if he or she wants that particular attorney present. See United States v. Brown, 569 F2d 236 (5th Cir. 1978). It is also not required in every case that an explicit statement waiving the right to counsel is indispensable to a finding of waiver. "The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler, — U. S. — (Case No. 78-354, decided April 24, 1979). Thus, "the defendant's silence, coupled with an understanding of his rights and a course of conduct may . . . support a conclusion that a defendant has waived his rights." North Carolina v. Butler, supra. Williams was 25 and worked in an Atlanta airport restaurant. He voluntarily surrendered and obtained retained counsel before surrendering to the police. When Miranda warnings were given on October 16, he acknowledged he understood them, and on cross examination on trial, he affirmatively

---

[1]It is the law of Georgia that considering the totality of the circumstances, a statement may be shown to be voluntary when made in the absence of retained counsel. *Whisman v. State,* 221 Ga. 460 (145 SE2d 499) (1965); *Pierce v. State,* supra.

acknowledged that he knew he had the right to counsel when interviewed on October 17. We conclude this course of conduct clearly shows a waiver of the presence of retained counsel.

5. Appellant contends it was error to permit the jury, over objection, to overhear a colloquy between the court and Randy Dixon who was to testify for the state but balked when his attorney was not present. During the discussion, the court established the reason Dixon was refusing to testify was because he did not want to be a "snitch." He said he had a brother in jail and ". . . I'm not going down the road with this on my back 'cause I know what they'll do to a snitch . . . He snitched see, and that's his business. I'm not going, you know, come back and snitch on him because he did me like that . . ." Appellant contends this discussion created reversible error because it exposed appellant to prejudicial and damaging remarks as well as representing an attempt by the prosecution to put a witness on the stand for the purpose of having him exercise his privilege against self-incrimination before the jury. See Bowles v. United States, 439 F2d 536 (D.C. Cir. 1970). There is no evidence of knowledge by the prosecutor that this witness would not testify unless his attorney was present. The prosecutor's office had sought to find Dixon's attorney for him, but could only establish that the attorney was "out-of-pocket"; however, this falls far short of establishing that the prosecutor knew Dixon would not testify. On the contrary, the colloquy that resulted showed he was surprised by this development. There was neither "a conscious and flagrant attempt" to build the prosecution's case out of inferences arising from the use of the testimonial privilege nor did the refusal to testify add "critical weight" to the prosecution's case. See Namet v. United States, 373 U. S. 179 (1963). Here there was abundant evidence independent of Dixon's testimony establishing Williams' role in the crimes, including his own testimony linking him to the robbery. Further, as to whether or not the elicited discussion between the court and Dixon was prejudicial, we cannot say in the absence of an objection to the remarks, a motion for mistrial or a demand for curative instructions such as would preserve the issue for review on appeal. *Allen v. State,* 235 Ga. 709,

715 (221 SE2d 405) (1975). Assuming the remarks were prejudicial, we would find them harmless as being merely cumulative of appellant's own statements given to police and testimony at trial in which he sought to escape all responsibility for the crimes by placing the blame on Dixon.

*Judgment affirmed. All the Justices concur, except Hill, J., who dissents as to Division 5.*

SUBMITTED AUGUST 24, 1979 — DECIDED OCTOBER 17, 1979.

*Montgomery & McDonald, Robert C. Montgomery,* for appellant.

*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.

HILL, Justice, dissenting.

During the trial of Thomas Williams, the prosecutor called an alleged accomplice, Randy Dixon, to the stand to testify for the state. The prosecutor asked Dixon if he had pled guilty to the offense of felony murder of Mary Russell. Upon receiving an affirmative answer, the prosecutor asked Dixon who was with him when he robbed the victim. Dixon said he did not want to answer without his attorney being present. The prosecutor sought to have the court instruct the witness to answer, saying that his only basis for refusing was self-incrimination and his guilty plea removed that privilege. Defense counsel moved that these matters be considered outside the presence of the jury. This motion was overruled and the prosecutor was allowed to proceed.

The prosecutor proceeded to argue his motion to compel answer, contending that the witness had no right to counsel. The court asked the witness the basis for his refusal to testify. The witness said, among other things, ". . . I'm not going down the road with this on my back, cause I know what they'll do for a snitcher, and I'm not a snitcher, see. He snitched, see, and that's his business. I'm not going, you know, come back and snitch on him because

he did me like that."[1]

The majority find that there is no error to be reviewed ". . . in the absence of an objection to the remarks, a motion for mistrial or a demand for curative instructions such as would preserve the issue for review on appeal." In my view, where the state calls an alleged accomplice who refuses to testify, and the defense moves to exclude the jury while a motion to compel is being argued, it is an abuse of discretion not to exclude the jury. I would not require a further objection, or motion for mistrial or curative instructions.

Having an alleged accomplice on the witness stand refusing to testify is a potentially explosive situation and overruling the motion to excuse the jury under these circumstances was an abuse of discretion in my opinion.

---

[1]An investigator for the district attorney's office had testified that the defendant confessed first and named Dixon. After the discussion between the court and Dixon, the court ruled that the witness would not be compelled to answer without his attorney being present.