## 72939. GRAVES v. THE STATE.
(349 SE2d 519)

BIRDSONG, Presiding Judge.

Wilson Dennis Graves was convicted of armed robbery in the hijack of an Adel Grocery Company truck in Ocilla. On appeal he enumerates error on general grounds, on the trial court's refusal to direct a verdict of acquittal for fatal variance in the indictment and proof, and on errors in admitting his statement of confession. *Held*:

1. Appellant contends the evidence was insufficient to authorize the verdict of guilty, under OCGA § 16-2-20 as to commission of a crime, essentially because the uncontradicted evidence in the case was that not he but his co-actor, Sheffield, used a gun to accost the driver of the grocery truck; and, further, because the evidence showed the whole criminal idea was Sheffield's, and appellant complied in the crime only because of fear.

The evidence in this case, though diverse as to many details, authorized the jury to conclude that appellant and Sheffield drove from Florida to Georgia in a Ryder truck rented by Sheffield, with the intention to "take" a truck. If the intention to take a truck was first conceived by Sheffield, appellant soon knew of it. Sheffield (who pled guilty to the offense) testified he did not "verbally" threaten appellant and that he offered appellant $2,000 to go along and that was why appellant complied. Appellant registered the two at a motel in Moultrie under the assumed name of "Willie Jones" on March 19, 1985. On the morning of March 20, at a truck stop off Interstate 75, Sheffield spotted an Adel Grocery Company truck and told appellant to let him out to "case" the truck and to drive down I-75 and then return. Appellant did so, driving off down I-75, then voluntarily returning to pick up Sheffield. The two followed the grocery truck to Ocilla, with some maneuvering, until finally the grocery truck driver, Mock, pulled over and asked if they were lost or if he could help them. The passenger Sheffield went over to the grocery truck and held a gun to the driver. Appellant got out and attempted to handcuff Mock, but Mock broke away and ran to the police station.

Appellant then drove the grocery truck while Sheffield drove the Ryder rental truck; the two hid the grocery truck and the Ryder truck in the woods and walked to Andrew Dixon's "shoppette" store in Moultrie. The evidence is uncontradicted that appellant knew Dixon from previous acquaintance; Sheffield did not know Dixon until appellant introduced the two. Dixon had arranged at some point to have a buyer for the groceries on the grocery truck. Reasoning that a police alert would be out for the Ryder rental truck and certainly for the grocery truck, Sheffield and appellant desired to obtain another truck; a young man (Boges) arrived serendipitously at Dixon's store and at Dixon's request went with the two to rent a U-Haul truck to "move

furniture," using Boges' driver's license because the two men claimed not to have one. Appellant paid for the rental of the U-Haul. With Boges driving the U-Haul, and appellant driving the Boges' car, the three went to the woods where Boges saw the Ryder truck and the Adel Grocery Company truck, stopping along the way for appellant to retrieve along the roadside his "stuff . . . [his] protection," which Boges perceived to be guns in a bag.

About this time Boges, who had thought he was doing Mr. Dixon a favor by helping these guys "move," began to get suspicious. When they arrived where the Ryder and grocery trucks were hidden in the woods, the appellant opened the grocery truck door and said to Boges: "Go help [and] unload it," or "Y'all go unload the truck." Boges said: "What the hell's going on?" and appellant looked at Sheffield and said: "Tell him we do this all the time." Boges did as he was told, and as soon as he could he got in his car and "blew [it] up . . . getting back to town." He broke down along the way, and when he finally arrived back at Mr. Dixon's store to be paid, appellant and Sheffield were already there. Appellant said to Dixon, "pay him," and Dixon paid him $100.

As the group stood outside the store where the U-Haul was parked, the GBI arrived, tipped off by an owner of the Adel Grocery Company who coincidentally spotted the U-Haul truck as it was driven back to Dixon's store. When the GBI arrived, appellant "broke and ran." According to some of the testimony, it was the appellant who seemed to be the leader of the escapade, and the "tall man" (Sheffield) took orders from him.

This evidence is amply sufficient to authorize a reasonable trier of fact to rationally find therefrom proof of guilt beyond a reasonable doubt, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560), both as to the direct commission of the crime of armed robbery by appellant and as to the intentional aiding and abetting of it under OCGA § 16-2-20.

2. Appellant's contention of a fatal variance in the allegata and probata, is without merit. The indictment charged the taking of "one 1976 Ford LN 700 truck, bearing Georgia Registration Plate PJ 1343," whereas the truck was a 1977 model. Under the rule stated in *DePalma v. State*, 225 Ga. 465 (3) (169 SE2d 801); the variance in this case was not fatal, as being one which "misinformed or misled the defendant to his prejudice or leaves him subject to subsequent prosecution for the same offense. *Russell v. United States*, 369 U. S. 749 (82 SE 1038, 8 LE2d 240) [and cits.]" *Givens v. State*, 149 Ga. App. 83, 85-86 (253 SE2d 447).

The State's witness proved that the truck taken was a Ford LN 700, which bore the tag number PJ 1343 at the time it was taken. Thus, although the year model alleged (1976) was not proved, "there

was other identification sufficient to identify the vehicle described in the indictment and in the proof as being one and the same." *Clark v. State*, 178 Ga. App. 47, 48 (341 SE2d 909). There was no mistaking the proof of the truck taken as being the truck alleged taken in the indictment: there was only one Ford LN 700 with tag number PJ 1343 as alleged in the indictment, and this was the one proved taken. There is no possibility appellant was not definitely informed as to the charges against him, or could be prosecuted again for the taking on March 19, 1985, of a Ford LN 700 tag number PJ 1343; and therefore there was no fatal variance.

3. Appellant Graves contends he was entitled to a directed verdict of acquittal because his statement of confession was not adequately corroborated as required by OCGA § 24-3-53, which provides: "All admissions shall be scanned with care, and a confession of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction." This appellant's statement was well corroborated. He was identified as the one who drove the Ryder truck initially when it stopped Mock's truck; as the one who handcuffed Mock; as the one who directly participated in the unloading of the Adel Grocery truck; as the one who knew Dixon (who was to have arranged for a buyer) and introduced Sheffield to him.

4. As to the claim that there was no valid waiver of appellant's right to an attorney, the evidence clearly and repeatedly showed appellant was read his Miranda rights and understood them. He had two years of college education. The fact that he for some reason would not sign a "waiver" (see *Williams v. State*, 244 Ga. 485 (260 SE2d 879)) obviously does not necessarily mean he did not waive his rights, when, having admittedly understood his right to remain silent and have an attorney present and provided, he then talked freely to the officers in the absence of an attorney because of his desire to cooperate. There was no evidence of coercive pressure in this case, and appellant testified he was not threatened, pressured, intimidated or mistreated. Appellant sought to prove non-waiver by his statement to the officer that he would talk but would not sign anything. This proves not only waiver of the right to remain silent but of the assistance of an attorney as well.

5. Appellant contends the written statement entered into evidence was not his whole statement, but was the police investigator's version of his statement, leaving out as it did the elements referring to appellant's fear of Sheffield which appellant contends was the reason he participated in the armed robbery. However, appellant testified he agreed to or requested the officer's writing down what appellant said; and appellant signed the written statement and initialed it where minor corrections were made. The officer testified this was ap-

pellant's statement. We reject the contention that the criminal defendant can have his statement of confession kept out of evidence merely by contending there was something in it he did not say or something left out of it he did say. This is a matter for cross-examination and explanation. Even if appellant had not signed the statement as his own, the statement is not inadmissible on grounds that it was written by someone else from appellant's dictation because the officer who interviewed appellant would have been permitted to testify to the content of the verbal statement voluntarily given him by appellant. *Herrmann v. State*, 235 Ga. 400, 402 (220 SE2d 2).

6. Finally, appellant contends the statement was inadmissible because he was denied an attorney when he requested one at the time of his interrogation and before he gave the statement. The evidence does not support these contentions. The evidence, including appellant's own admission, shows he was advised of his *Miranda* rights, including his right to have counsel appointed, and understood these rights. Appellant implies that once the State found the appellant had no money, it was required to obtain a lawyer for appellant and say nothing further to him until and unless the lawyer was present. This amounts to an absolute prohibition against the State's receiving any evidence or statement from a criminal defendant unless his attorney approves. This is not the law. We find no merit in this appeal.

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED OCTOBER 1, 1986.

*Warren L. Mixon*, for appellant.
*David E. Perry, District Attorney, Diane L. Perry, Assistant District Attorney*, for appellee.