S90A0751. NEWBERRY v. THE STATE.
(395 SE2d 813)

BELL, Justice.

Newberry appeals from his conviction of the malice murder of Mylo Thomas.[1] Newberry contends that the evidence does not support the conviction; that the state improperly placed his character in issue; that the trial court erred in permitting the state to introduce evidence that three state's witnesses began implicating Newberry after taking a polygraph exam; and that the trial court erred in permitting the state to introduce the results of a polygraph test given to Newberry. We affirm.

The evidence showed that Newberry and Thomas were involved in selling drugs in Toccoa, Georgia; that Newberry thought Thomas was "switching soap for drugs"; and that about two days before Thomas was shot Newberry had stated that he was going to steal a car and rob a jewelry store and that if Thomas was not "strong enough," he would kill Thomas.

Thomas was shot and killed on January 24, 1989, in Cicely

---

[1] The crime occurred on January 24, 1989. Newberry was indicted on March 16, 1989. A jury found Newberry guilty on September 27, 1989. Newberry filed a motion for new trial on October 11, 1989. The court reporter certified the transcript on October 16, and Newberry amended his motion for new trial on February 12, 1990. The trial court denied Newberry's motion for new trial on February 16. Newberry filed a notice of appeal on February 22. The appeal was docketed in this court on March 13, 1990, and was orally argued on May 22.

Luster's car. The shooting occurred while Luster, Thomas, Newberry, Willie McCullough, and Darrell Mayfield were driving from Toccoa to Gainesville. The state introduced evidence that Thomas was going to obtain some money in Gainesville so that Luster could get an attorney to help her get her boyfriend out of jail. The state also introduced evidence that Thomas and Newberry discussed buying drugs in Gainesville.

Luster, McCullough, and Mayfield all agreed that Thomas initially had the gun in question, and that at the time of the shooting Newberry was in the front passenger seat of the car and Thomas in the backseat. However, the three eyewitnesses gave conflicting stories about how the shooting occurred. In statements given to police on January 24, they stated that Thomas always had possession of the gun and shot himself in the mouth. However, in statements given to police on January 30, they stated that Newberry had taken the gun from Thomas when the group had made a stop on the way to Gainesville. Moreover, Luster and Mayfield stated that they saw Newberry face the backseat with the gun; that they then heard a shot; but that they did not actually see Newberry pull the trigger. McCullough stated that Newberry pointed the gun at Thomas' mouth and pulled the trigger.

At trial, Luster, who was driving the car when the shooting occurred, testified that in the car mirror she saw Newberry shoot Thomas. Mayfield's trial testimony was consistent with his January 30 statement. At trial McCullough testified consistent with his January 24 statement, maintaining that Thomas shot himself.

After the shooting, McCullough and Mayfield left the scene and hitchhiked back to Toccoa. Luster then drove the car to an isolated road, where Newberry dragged Thomas' body from the car. According to Luster, Newberry told her to throw the gun away; that he had shot someone before; and that if she told the police what had happened, he would have her killed.

At trial the state was permitted to introduce evidence that Luster, McCullough, and Mayfield gave their January 30 statements implicating Newberry as the killer after they took polygraph tests (the tests presumably indicated they were not being truthful in their January 24 statements). The state did not introduce the results of the tests.

Newberry did not testify at trial. However, the state did introduce evidence that on the night of January 24 Newberry waived his *Miranda* rights and gave a statement to the effect that Thomas shot himself. Moreover, the state was also permitted to introduce the results of a polygraph test taken by Newberry on January 25. The polygraph examiner who tested Newberry testified that Newberry denied shooting Thomas, but that the results showed that Newberry was be-

ing very deceptive.

1. Newberry first contends the evidence is insufficient to support his conviction. We disagree. After reviewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found Newberry guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Newberry argues the state improperly placed his character in issue on several occasions. We disagree. We find that, even though the evidence incidentally placed Newberry's character in issue, the evidence was relevant to establish motive and was therefore admissible. See *McGinnis v. State*, 258 Ga. 673 (2) (372 SE2d 804) (1988).

3. Newberry argues the state was improperly allowed to bolster the credibility of Mayfield, Luster, and McCullough, by showing that they began implicating Newberry only after taking a lie detector test. We disagree.

During Luster's direct examination, the state did not question her concerning the January 24 and January 30 statements. On cross-examination Newberry asked her, regarding her January 24 statement, if she told police officers that Thomas shot himself and if she failed to tell the officers that Newberry had threatened her. At a bench conference after cross-examination, the state asked the court to allow it to introduce testimony to the effect that Luster changed her story about the incident after she took a polygraph exam. The state said it would not introduce the results of that exam and was only introducing the evidence to explain her conduct in changing stories and not to bolster her credibility. The court admitted the testimony.

During the direct examination of McCullough the state discussed his January 24 and January 30 statements with him, and then obtained a ruling from the court that it could ask him whether he changed his story on January 30 because he took a polygraph test and was told the results of it. The state asked McCullough that question. McCullough denied that he changed his story as a result of the polygraph test (he stated the change resulted from police pressure), but he did acknowledge the change in his story.

The state did not ask Mayfield about his January 24 and January 30 statements on direct examination. On cross Newberry did ask Mayfield about the January 24 statement, eliciting testimony that Mayfield at first stated that Thomas killed himself. Immediately after Mayfield testified, the state introduced testimony from the police officer who took Mayfield's January 30 statement that Mayfield made the statement after the officer confronted him with the results of a polygraph exam. The officer read Mayfield's January 30 statement to the jury.

We have held that the state can admit evidence that a witness

has taken a polygraph exam to explain a witness' conduct if that witness' conduct is relevant to the issues on trial. See *Cromer v. State*, 253 Ga. 352, 355-357 (3) (320 SE2d 751) (1984); *Carr v. State*, 259 Ga. 318, 319-320 (1) (380 SE2d 700) (1989). Here, the conduct of Luster, Mayfield, and McCullough in changing their stories was itself an issue at trial, because the change in stories meant that the jury had to resolve whether the witnesses' January 24 or January 30 statements represented what actually happened in Luster's car. Accordingly, the fact that the witnesses took a polygraph exam was relevant to explain why they changed their stories and thus aid the jury in resolving the witnesses' conflicting stories. For these reasons, the trial court did not err in permitting the state to introduce evidence that the witnesses changed their stories after taking a polygraph test.

4. Newberry's final contention is that the trial court erred in allowing the state to introduce the results of the polygraph test given to him. Newberry contends the testimony was inadmissible because he was not apprised of his *Miranda* rights immediately before the test. We find no error.

Newberry was apprised of his *Miranda* rights some 24 hours before the polygraph test, and it was unnecessary to repeat those warnings before the polygraph exam. See *Godfrey v. Francis*, 251 Ga. 652, 656-657 (5) (308 SE2d 806) (1983); *Williams v. State*, 244 Ga. 485, 488 (4) (b) (260 SE2d 879) (1979).[2]

*Judgment affirmed. All the Justices concur, except Weltner, J., not participating.*

DECIDED SEPTEMBER 27, 1990.

*Cornwell, Church & Healey, Timothy P. Healey,* for appellant.
*Michael C. Crawford, District Attorney, Michael J. Bowers, Attorney General, Richard C. Litwin,* for appellee.

---

[2] We note that before the polygraph exam the polygraph examiner read Newberry two forms providing, inter alia, that if Newberry was not represented by counsel, he expressly waived that right; that Newberry was voluntarily consenting to take the exam; that Newberry understood he could terminate the exam at any time; and that Newberry was stipulating to the admissibility in evidence at his trial of the results of the exam. Newberry signed these forms.