## A03A1650. BANTZ et al. v. ALLSTATE INSURANCE COMPANY.
### (589 SE2d 621)

PHIPPS, Judge.

John and Lisa Bantz appeal from a jury verdict in favor of Allstate Insurance Company in this property insurance case. The Bantzes sued Allstate after a fire destroyed their home and Allstate refused to pay benefits under their policy because it believed Lisa Bantz intentionally caused the fire. The Bantzes contend they are entitled to a new trial because the trial court erred by: (1) excluding evidence that the person they believed caused the fire changed his story about his knowledge of the fire after being told the results of his polygraph examination; (2) allowing Allstate to present hearsay evidence that the exterior doors of the home were locked when the firefighters arrived; and (3) denying their motion to reopen the evidence at the conclusion of Allstate's case. For reasons that follow, we reverse.

1. The Bantzes contend the trial court should have allowed them to question Keith Thomas about how he changed his story about his knowledge of the fire only after being told the results of his polygraph examination.

The Bantzes did not seek to admit the results of the polygraph examination and do not dispute the well-settled law in Georgia that these results are not admissible absent the consent of both parties.[1] Instead, they rely on Supreme Court opinions[2] holding that evidence of a witness changing his story after learning the results of a polygraph examination is "admissible to explain the witness's conduct in changing his story."[3] For example, in *Newberry*,[4] the Supreme Court affirmed the trial court's decision to allow the state to ask one of its own witnesses during direct examination "whether he changed his story . . . because he took a polygraph test and was told the results of it."[5]

The Bantzes sought to do the same thing when they called Thomas, whom they suspected to be the arsonist, as a witness. The evidence they proffered showed that before taking a polygraph examination, Thomas denied any involvement in or knowledge about the fire. After being told by a Federal Bureau of Investigation agent that he "didn't do too good" on the polygraph, Thomas told the agent that a person named Banks confessed to him that he had been paid by Lee

---

[1] See, e.g., *Walker v. State*, 264 Ga. 79, 80 (2) (440 SE2d 637) (1994).

[2] *Jackson v. State*, 268 Ga. 391, 392 (2) (490 SE2d 84) (1997); *Newberry v. State*, 260 Ga. 416, 419 (3) (395 SE2d 813) (1990).

[3] *Jackson*, supra, 268 Ga. at 392 (2).

[4] Supra, 260 Ga. at 419 (3).

[5] Id. at 418 (3).

Williams to start the fire and take care of his problem with Lisa Bantz. According to Thomas, Banks said that Williams's wife found out that he was sleeping with Lisa Bantz and Bantz also knew a lot about Williams's illegal activities. Thomas also told the agent that, in a later conversation, Banks told him that Lisa Bantz set the fire for the insurance money.

The Bantzes assert that they should have been allowed to show that their suspected arsonist pointed the finger at two different people after being told the results of his polygraph examination. According to the Bantzes, the jury could infer that Thomas was the arsonist because he gave contradictory stories. We agree[6] and find that the trial court abused its discretion when it prohibited the Bantzes from questioning Thomas about the fact that he had changed his story after learning the results of his polygraph examination.[7] Having found error, we must now analyze whether it was harmful.

The parties stipulated that the fire was intentionally set with the use of mineral spirits and gasoline. The central issue in the trial was whether Lisa Bantz or some other person intentionally started the fire. The evidence showing Bantz was the arsonist was not overwhelming. Although she admitted being in the home at the time of the fire, and thus had an opportunity to start it, she was badly burned by the fire and was hospitalized for over a month. Additionally, many of the typical indicia of a fire caused by a homeowner are absent from this case: the family pets were killed by the fire; family mementos such as photographs and trophies were not removed from the home and were damaged in the fire; and the Bantzes were not in financial trouble. Allstate argued that Lisa Bantz had a motive to set the fire because she wanted to move to Ohio as a result of widespread gossip and nasty phone calls about her having an interracial affair with Williams. At the time of the fire, the Bantzes' home was not for sale.

The Bantzes asserted that Thomas may have been the arsonist based on a comparison of his handwriting to the words "White Ho" that were written in lipstick on the bathroom mirror at the time of the fire. Lisa Bantz also testified that Thomas lived approximately one block away and that he would whistle at her, honk, or say things to her that made her uncomfortable when he drove by. She com-

---

[6] See *Cody v. State*, 222 Ga. App. 468, 470 (1) (474 SE2d 669) (1996) (defendant's contradictory statements, along with other evidence, "provided further evidence of his participation in the crime"); *Austin v. State*, 89 Ga. App. 866, 869 (2) (81 SE2d 508) (1954) (jury could consider contradictory statements of defendant as evidence that he knew automobile was stolen).

[7] *Jackson*, supra, 268 Ga. at 392 (2); *Newberry*, supra, 260 Ga. at 419 (3).

plained to Thomas's employer, Williams, several times about this behavior, but it did not stop. Once, while Bantz was present, Williams instructed Thomas to leave her alone.

The jury had trouble reaching a verdict in this case; during their deliberations they informed the trial court they could not reach a unanimous verdict and did so only after receiving a "dynamite charge." Based on the evidence submitted during the trial and the jury's difficulty in reaching a verdict, we find that the jury might have altered its verdict if it had heard the excluded evidence.[8] As a result, we must reverse this case for a new trial. Because the other evidentiary error asserted by the Bantzes might occur in a retrial of this case, we will address it.

2. The Bantzes assert that the trial court erred by allowing hearsay testimony over their objection on a critical issue, specifically, whether the exterior doors to the home were locked at the time of the firefighters' arrival, which would support the inference that only Lisa Bantz had the opportunity to start the fire. During its cross-examination of John Bantz, Allstate established that it was Bantz's understanding in June 2000, based on what he had been told by firefighters, that all three exterior doors to the house were locked at the time of the fire.

Allstate argues that this evidence was admissible to explain John Bantz's conduct, i.e., his earlier testimony on cross-examination that "he could not figure out how a third party could get into the house and set it on fire." Hearsay evidence can be admitted to explain conduct *if* the conduct is "a relevant issue in the case."[9] And, if it is admitted for this purpose, it cannot be used to prove the truth of the matter asserted.[10] The record reflects that Allstate elicited this testimony to prove that the exterior doors to the home were locked at the time of the fire, not to explain Mr. Bantz's earlier testimony. In closing argument, Allstate's counsel stated, "[Opposing counsel] wants to talk about my promises about the doors being locked. Each of you remember Mr. Bantz is the one who said the firemen got there and found all the doors locked and had to break in." Additionally, whether Mr. Bantz could figure out how someone entered the home "cannot reasonably be considered relevant to the issues [of this case]."[11]

---

[8] See *Powers Ferry Constr. v. Commerce Builders*, 191 Ga. App. 327, 329 (2) (381 SE2d 755) (1989) (errors in admission and exclusion of evidence that would not possibly alter or affect outcome of the case are harmless).

[9] (Citation omitted.) *Bryant v. Carver State Bank*, 207 Ga. App. 659, 660 (1) (428 SE2d 621) (1993). See also *Jackson v. Dunkin' Donuts*, 211 Ga. App. 598 (440 SE2d 56) (1993).

[10] See *Torstenson v. Doe*, 257 Ga. App. 389, 391 (2) (a) (571 SE2d 432) (2002).

[11] *Bryant*, supra, 207 Ga. App. at 660 (1).

Allstate also argues that testimony elicited by the Bantzes' counsel on redirect establishes that his testimony about the locked doors was based on personal knowledge. We disagree. On redirect, Mr. Bantz testified that his present understanding was different from the one he had in June 2000 in that it was based on his own examination of the evidence. Thus, it does not demonstrate personal knowledge for his June 2000 understanding that the exterior doors were locked.

The trial court erred when it allowed Allstate to elicit hearsay testimony from Mr. Bantz. Our holding in Division 1 makes it unnecessary for us to analyze whether the admission of this hearsay evidence was harmful.

3. Our decision in Division 1 makes the Bantzes' remaining claim of error moot.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 31, 2003 — 

*Donaldson, Bell & Pickett, George P. Donaldson III, Lewis R. Lamb*, for appellants.

*Webb, Zschunke, Miller & Dikeman, Marvin D. Dikeman*, for appellee.

