**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 23, 2014**

# In the Court of Appeals of Georgia

A14A1388. INGRAM v. THE STATE.

BRANCH, Judge.

Marquis Ingram appeals his conviction of armed robbery and possession of a firearm during the commission of a crime, as well as the denial of his motion for new trial. On appeal, he contends the trial court erred by denying his motion to suppress his custodial statement, that his trial counsel was ineffective, and that the evidence was insufficient to support the verdict. For the reasons that follow, we affirm.[1]

Construed in favor of the verdict, the evidence shows on the morning of November 18, 2009, Ingram, co-defendant Alexander Williams, and another man

---

[1] Neither party has followed the rules of this Court with regard to the proper form for citation to the appellate record. We remind the bar that the Rules of the Court of Appeals require that record and transcript citations must be to the volume or part of the record or transcript and the page numbers that appear on the appellate records or transcript as sent from the court below. See Rule 25.

entered Jason Pope's Stone Mountain apartment under false pretenses. Williams put a pistol to Pope's head, and he and the other two men hit Pope with pistols, tied Pope up, and stated that they wanted "money and . . . weed," which Pope denied having. Ingram and his co-defendants then took many items that belonged to Pope and his roommate, including Pope's television, jacket, cell phone, and laptop computer. At trial, Pope identified Ingram as one of the men and testified that he had seen Ingram in the neighborhood on a prior occasion.

At approximately 1:40 p.m. on the day of the robbery, police stopped a green Honda for speeding on Interstate 20 in Dekalb County; the car was occupied by four men, including Ingram. At some point during the stop, the officer learned that the police were looking for a green Honda Accord in connection with a suspected crime. Officers detected the odor of marijuana, the men were removed from the vehicle and patted down for officer safety, and the officers summoned a drug-sniffing K-9. The officers found one handgun on Ingram's person, and they recovered three other handguns during the stop. The K-9 alerted on the Honda during a free-air sniff, which led to a search of the car, and three of the men, including Ingram, were placed under arrest at the scene and then transported to police headquarters. Ingram was found in possession of Pope's cell phone at the time of his arrest. During the search of the car,

2

the officers recovered Pope's television and laptop computer, as well as other items that belonged to Pope's roommate.

At police headquarters, Ingram was placed in the interview room at about 3:35 p.m. Officer Zeric of the violent crime task force (gun unit) read Ingram his Miranda rights at about 3:52 p.m.[2] Shortly thereafter, Ingram gave a statement in which he explained how he had obtained the gun and admitted that he knew the driver of the Honda. The interrogation by Zeric lasted approximately 20 minutes. Shortly after he left the interview room, Zeric learned that major-felony detectives suspected that Ingram may have been involved in the Pope armed robbery. Those detectives, including Detective Scott Black, took over Ingram's case, and Black began to interview the suspects, including Ingram. Zeric told Black that Ingram had already been read the *Miranda* warning and had consented to giving a statement.

Black's first contact with Ingram occurred sometime between 4:30 and 5:30 p.m., and he interviewed Ingram in the same interview room that Zeric had used. Black did not reread Ingram his Miranda rights, although he asked Ingram at one point if he understood his Miranda rights as explained by Zeric. Ingram answered that he

---

[2] Although the form states that an officer read the Miranda rights at 1:52, Officer Zeric explained that the time on the form was a mistake.

3

did. At approximately 6:30 p.m., Ingram gave a statement. Between 7:00 and 7:59 p.m., Black wrote out Ingram's statement in which Ingram admitted entering Pope's apartment, pointing a gun at Pope's head, tying Pope up, hitting Pope, and taking items from Pope's apartment.

1. Prior to trial, Ingram moved to suppress his statement on the ground that he should have been read his Miranda rights a second time at the beginning of Black's interrogation. The trial court denied the motion, reasoning that Zeric properly informed Ingram of his Miranda rights, that there is no duty to repeat the Miranda warnings when separate interviews are part of a continuing interrogation, and that Black's interview of Ingram was part of a continuing interrogation.

"The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances." *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008) (citation omitted).When the appellate courts review the trial court's decision on a motion to suppress, "the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011) (citation omitted).

4

Here, the trial court found that the Black interview was part of a continuing interrogation; that conclusion is supported by the facts and the law. Although Ingram argues that the break between the Zeric interview and the beginning of the Black interview amounted to five hours, the evidence presented at the Jackson-Denno hearing and at trial shows that the break could have been less than 30 minutes. Zeric's interview lasted approximately 20 minutes starting 8 or more minutes before 4:00 p.m., and Black testified that he first made contact with Ingram between 4:30 and 5:30 p.m. Thus, the trial court was not clearly erroneous when it concluded that the two interviews were part of a continuing interrogation. See, e.g., *Sosniak v. State*, 287 Ga. 279, 285 (1) (B) (695 SE2d 604) (2010) (trial court's finding that interviews were part of a continuing interrogation was supported by the record when two interviews were conducted in one day). Moreover, the Georgia Supreme Court has held that the State has no duty to repeat Miranda warnings in separate interviews that are part of a continuing interrogation. *Williams v. State*, 244 Ga. 485, 488 (4) (b) (260 SE2d 879) (1979) (no duty to repeat warnings given the day before where they were part of a continuing interrogation); *Carswell v. State*, 279 Ga. 342, 344 (2) (b) (613 SE2d 636) (2005) (additional Miranda warnings not required for a series of five interviews held over the course of 12 to 14 hours).

Finally, there is no merit to the argument that additional Miranda warnings were required because Black raised a new topic – the possibility that Ingram was involved in the armed robbery – without giving a new Miranda warning. See *Christenson v. State*, 261 Ga. 80, 86 (3) (402 SE2d 41) (1991) ("a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege") (citation and punctuation omitted).

For all these reasons, the trial court did not clearly err when it denied Ingram's motion to suppress.

2. Ingram contends his trial counsel was ineffective because counsel failed prior to trial to review thoroughly Ingram's video-taped statement, which led to the court denying the motion to suppress the statement. According to Ingram's brief and his counsel's testimony at the hearing on the motion for new trial, Ingram specifically argues as follows: Black testified at the hearing on the motion to suppress that he asked Ingram *at the beginning of the interview* whether he remembered the Miranda warning given by Zeric; at trial, the audio tape of the interrogation shows that Black failed to ask that question until much later in the interview; had counsel thoroughly reviewed the tape, of which he was aware, prior to trial, he would have known when

6

Black asked this question; accordingly, counsel was not prepared at trial to cross-examine Black with regard to his testimony.

This argument is made moot by our holding in Division 1. Ingram could not have been harmed by this alleged failure on the part of counsel because even if Black had never asked Ingram whether he remembered the Miranda warning given by Zeric, Ingram's statement would have been admissible as a part of a continuing interrogation that began with a proper Miranda warning. Thus, it is legally irrelevant exactly when Black asked Ingram whether he remembered the earlier Miranda warning.

3. As shown by the above statement of facts, the evidence presented at trial, including Ingram's statement, was sufficient to support the verdict finding him guilty of armed robbery and possession of a firearm during the commission of a crime. OCGA §§ 16-8-41 (a); 16-11-106. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*