**FOURTH DIVISION**
**DOYLE, P. J.,**
**RICKMAN and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 28, 2019**

# In the Court of Appeals of Georgia

A19A0333. HEARD v. PAYNE et al.

RICKMAN, Judge.

Following Vickie Heard, Michael Bryan Payne ("Bryan"), and Larry Payne's competing claims to a winning lottery ticket, the Georgia Lottery Corporation ("the Corporation") filed a complaint for interpleader seeking a determination as to which party had a right to the lottery funds. The case was tried before a jury, and the jury found that Larry was the rightful owner of the lottery ticket at issue. The trial court entered an order on the verdict, directing the Corporation to pay the prize winnings to Larry. Heard appeals from the trial court's order. Heard contends that the trial court erred by denying her motion to exclude the testimony of a witness, allowing the same witness to testify that Bryan agreed to take a polygraph examination, and by allowing the Paynes to introduce certain evidence. For the following reasons, we affirm.

We must construe the evidence in favor of the jury's verdict. See *Evans v. Cushing Properties*, 197 Ga. App. 380 (1) (a) (398 SE2d 306) (1990). So construed, the evidence showed that Larry lives in Alabama. On February 13, 2015, Larry and his cousin drove from Alabama to Tennessee to pick up a car. After purchasing the car, Larry stopped in Trenton, Georgia and bought a lottery ticket. When he got home, Larry gave the lottery ticket to his cousin so that his cousin could check the numbers for a winner on his computer. In June 2015, Larry's cousin gave Larry four lottery tickets, including Larry's ticket from February, and told him that he had not checked the numbers for a winner. Larry put the tickets underneath the sun visor in his car.

Approximately one month later, Larry let Bryan, his nephew, borrow his car to drive to Georgia. Larry eventually remembered that the lottery tickets were in the car, and he called and asked Bryan to redeem them for him in Georgia. In Georgia, Bryan stopped at a gas station to check all four tickets. The gas station clerk informed Bryan that three were worth $7 each and that one was worth more than $600, so he would have to call the Corporation for information about the pay out. Initially, Bryan thought he might keep the money for himself and did not call Larry to update him on the status of his tickets.

Two days later, Bryan was working at Heard and her husband's auto body shop when he told Heard that he needed to take the next day off of work to cash in the lottery ticket. Bryan asked if someone could accompany him to Georgia, and Heard volunteered her sister to ride with him. After arriving at the Corporation, an employee checked the ticket and informed Bryan and Heard's sister that the ticket was worth $1 million. Upon returning to the body shop, Heard's sister told Heard the value of the ticket, and Bryan stated that he needed to call and tell Larry about the winning ticket. Heard, however, encouraged Bryan to wait and surprise Larry later in the week.

Later in the week, Heard's husband called Larry, his cousin, and asked him to come to the shop. At the shop, Heard told Larry that Bryan had won $1 million in the lottery but that Bryan had stolen her lottery ticket. Heard told Larry that the numbers on the ticket were the same numbers that she picked every time. But when Heard confronted Bryan, he stated he got the ticket from the sun visor of Larry's car.

Heard contacted the Etowah County Sheriff's Department about the alleged theft. She told the assigned investigator that she knew the ticket was hers because she always played certain numbers. Although Heard informed the investigator that she purchased the ticket in Trenton, Georgia, she was unsure of which gas station she

bought the ticket from. Notably, during one of her many phone calls to the Corporation, Heard repeatedly asked the Corporation employee to tell her which gas station the ticket was purchased from. Ultimately, the investigator determined that no charges should be brought against Bryan. The investigator testified that Bryan agreed to take a polygraph examination and that his agreement to take the examination factored into his decision not to prosecute.

The investigator for the Corporation testified that Heard also told him that the numbers on the ticket were numbers that she always played. He also testified, however, that the ticket in question was a quick pick lottery ticket, meaning that the computer picked the numbers, which was inconsistent with Heard's statements that she chose the numbers.

A forensic document examiner testified as an expert that the watermark on the lottery ticket was very faint, which would be consistent with having been left in an automobile in Alabama during the summer.

Heard's husband testified that on the day the lottery ticket was purchased, he and Heard had "switched phones" and that he stayed at the shop all day. The phone records for the phone that Heard was allegedly using on that date showed that calls were made from Irondale and Moody, Alabama. When asked what Heard would have

4

been doing in Irondale or Moody, Heard's husband responded, "well, if she went, that's the place where we pick up cars." Heard testified that she did not take a phone with her on the date she bought the lottery ticket when she traveled alone from Alabama to Trenton, Georgia. Instead, she "carr[ied] a pistol."

The Corporation filed a complaint for interpleader seeking a determination as to whether Larry, Bryan, or Heard had a right to the lottery funds. The trial court granted a partial directed verdict against Bryan because he testified at trial that he did not claim any interest in the ticket. The jury found "in favor of Defendant Larry Payne and that he is the rightful owner of the Powerball lottery ticket at issue."

1. Heard contends that the trial court erred by denying her motion to exclude the Sheriff's Office investigator from testifying. Heard argues that the investigator's testimony was not relevant to any issue in the case.

"All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules. . . . Evidence which is not relevant shall not be admissible." OCGA § 24-4-402. "[T]he term "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "[E]vidence having a

5

tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence." (Citation and punctuation omitted.) *City of Atlanta v. Bennett*, 322 Ga. App. 726, 728 (1) (746 SE2d 198) (2013). "A trial court's ruling that evidence is relevant will not be reversed absent abuse of discretion." *Central of GA Railroad Co. v. Ross*, 342 Ga. App. 27, 32 (2) (802 SE2d 336) (2017).

Here, Heard was the one who called the investigator to report that her ticket had been stolen. The investigator's testimony regarding his investigation and conversations he had with Heard where she did not remember what gas station she purchased the ticket from and that she claimed to always play the specific numbers on the ticket, was highly relevant to the main issue of the case. Accordingly, the trial court did not abuse its discretion in failing to exclude the investigator's testimony. See *Jackson v. Heard*, 264 Ga. App. 620, 621 (591 SE2d 487) (2003); *Butgereit v. Enviro-Tech Environmental Svcs.*, 262 Ga. App. 754, 758 (3) (586 SE2d 430) (2003).

2. Heard contends that the trial court erred by allowing the Paynes to ask the investigator if he asked Bryan to take a polygraph examination.

Heard filed a motion in limine to exclude any reference regarding Bryan taking a polygraph examination. The trial court granted Heard's motion but cautioned him that if he attacked the sufficiency of the investigator's investigation then he "could open the door to the polygraph information."

During Heard's cross-examination of the investigator, Heard focused on the inadequacies of his investigation. At the conclusion of Heard's cross-examination, the Paynes' trial counsel argued that Heard had opened the door to the introduction of evidence about the polygraph. The trial court agreed and allowed Payne to ask the following questions:

Trial Counsel: Okay. As part of your investigation, did you ask Bryan Payne to take a polygraph test?

Investigator: I did.

Trial Counsel: Did he agree to do so?

Investigator: He did.

Trial Counsel: Did the agreement that he agreed to take a test factor into your decision not to prosecute?

Investigator: It did.

The jury was never told whether a polygraph examination took place or, if it did, what the results of that examination were.

"The general rule in Georgia is that the results of polygraph tests, including voice stress tests, whether favorable or unfavorable to an accused, are not admissible in evidence, as they are not considered reliable." *Parfenuk v. State*, 338 Ga. App. 95, 98 (2) (789 SE2d 332) (2016).

Here, the Paynes did not seek to admit the results of the polygraph test or even that a test occurred, they sought the testimony that Bryan agreed to take the polygraph to rebut the inference created by Heard that the investigator did not do a thorough or lengthy investigation. They sought to introduce the evidence to help explain the conduct of the investigator. Accordingly, the trial court did not err in finding that Heard opened the door and allowing the questions regarding whether Bryan agreed to take a polygraph test. See *Newberry v. State*, 260 Ga. 416, 418 (3) (395 SE2d 813) (1990) (holding that the defendant opened the door to testimony about the witness taking a polygraph test because "the state can admit evidence that a witness has taken a polygraph exam to explain a witness' conduct if that witness' conduct is relevant to the issues on trial."); *Bantz v. Allstate Insurance Co.*, 263 Ga. App. 855, 856-857 (1) (589 SE2d 621) (2003) (reversing the trial court because it erroneously excluded

8

evidence regarding a witness changing his story after being told the results of his polygraph test).

3. Heard contends that the trial court erred by allowing the Paynes to introduce a bill of sale and the title for the car that Larry purchased the day he bought the lottery ticket as well as Larry's credit card statement showing where he used his credit card on the same day.

Pretermitting whether the trial court erred in admitting the evidence under an exception to the hearsay rule, their introduction was harmless because "the admission of hearsay is harmless when it is cumulative of legally admissible evidence showing the same fact." (Citation and Punctuation omitted.) *Travelers Property Casualty Co. of America v. SRM Group*, 348 Ga. App. 136, 144 (5), n. 2 (820 SE2d 261) (2018).

Here, the title, bill of sale, and credit card statement were introduced to show that Larry traveled to Tennessee to purchase a car on the same date that he purchased the winning lottery ticket. However, other evidence was admitted to show the same information, including Larry and his cousin's testimony to that effect and a date-stamped photograph Larry took after he purchased the vehicle.

Accordingly, any erroneous introduction of the challenged evidence was harmless error. See *Smith v. Stacey*, 281 Ga. 601, 601-602 (1) (642 SE2d 28) (2007); *White Horse Partners LLLP v. Monroe County Board of Assessors*, ___ Ga. App. ___ (2) (824 SE2d 57) (2019).

*Judgment affirmed. Doyle, P. J., and Coomer, J., concur.*