## 38206. BERRYHILL v. THE STATE.

JORDAN, Chief Justice.

Michael Gene Berryhill, a/k/a Michael Gene Stanley, was convicted of felony murder and armed robbery by a jury in Bartow County in January of 1975. He received the death sentence for the felony murder and life imprisonment for the armed robbery. His convictions and sentences were affirmed by this court on direct appeal. *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975) (cert. den. 429 U. S. 1054 (1977)). The denial of habeas corpus as to the felony murder conviction was affirmed by this court in *Berryhill v. Ricketts,* 242 Ga. 447 (249 SE2d 197) (1978) (cert. den. 441 U. S. 967 (1979)).

A federal habeas corpus petition was granted by the United States District Court for the Northern District of Georgia on May 13, 1980, and the appellant was retried in June of 1981 in the Superior Court of Bartow County as to guilt-innocence and sentence. He again was found guilty of felony murder and armed robbery and sentenced to death.

The facts surrounding the murder of the victim, George C. Hooks, Jr., and the armed robbery of his wife are adequately set forth in *Berryhill v. State,* supra, and will not be repeated here.

1. In his first three enumerations of error, appellant argues the general grounds, contending that the evidence established his insanity.

Appellant introduced evidence of his long history of drug abuse and a diagnosis of a sociopathic personality. However, the jury heard evidence to the effect that although the appellant had been drinking and sniffing a glue-like substance on the day of the crime, he had driven around with an accomplice, had obtained from a friend guns which he had stolen in earlier burglaries, had purchased ammunition for the gun that he used to kill the victim, and had planned the burglary of the victim's house. The appellant then carried out the planned burglary. This evidence was elicited from the appellant himself under oath. He also admitted under oath that he broke into the victim's house, fired the fatal shot into the victim, then, having understood what he had done, that he had fled the state to avoid detection for his crime.

The victim's family also testified as to identity and the circumstances of the murder and robbery.

Appellant's own expert witness's testimony established that appellant knew right from wrong, and that appellant was not suffering under a delusional compulsion.

The evidence overwhelmingly supports a finding by a rational

trier of fact of each and every essential element of felony murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The appellant complains in his fourth enumeration of error that the trial court erred by failing to grant his motion for change of venue. He asserts that because of pretrial publicity and local knowledge of the crime and the previous trial and verdict, it was impossible to obtain an impartial jury. We do not agree. First, it must be noted that there were only two instances of pretrial publicity prior to the second trial, both of which were factual in nature, and both of which only reported that the appellant's first conviction and sentence had been reversed and that a new trial was to take place. The trial court made every effort to prevent any pretrial publicity that could taint the jury pool. In fact, the appellant concedes that there is no evidence of a "total inundation of the judicial process by the media" at this trial. Sheppard v. Maxwell, 384 U. S. 333 (86 SC 1507, 16 LE2d 600) (1966); Estes v. Texas, 381 U. S. 532 (85 SC 1628, 14 LE2d 543) (1965); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980).

Appellant argues that the press coverage at the first trial of the appellant created such an atmosphere in the community that an impartial jury and a fair trial were impossible. However, this pretrial publicity occurred over six years prior to the time of the second trial. Remoteness of time between the trial and the adverse pretrial publicity has been held to be one of the factors in determining whether a change of venue is required. *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979). While each case must be determined on an individual basis, we hold that evidence of adverse publicity occurring 6 years prior to the trial, without more, is not sufficient evidence of a trial atmosphere "utterly corrupted by press coverage." Murphy v. Florida, 421 U. S. 794, 798 (95 SC 2031, 44 LE2d 589) (1975). See *Harris v. State,* 237 Ga. 718 (230 SE2d 1) (1976) (four month break in publicity); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977) (13 month break in publicity); *Brooks v. State,* supra, (2 2/3 month break in publicity).

Appellant relies on the fact that the community had knowledge of the prior trial and had formed opinions as to his guilt or innocence based on his previous trial. Both this court and the Supreme Court of the United States have considered the "small-town syndrome" before. *Cunningham v. State,* 248 Ga. 558 (284 SE2d 390) (1981). A serious case draws public attention, and hardly any prospective juror will not have formed some impression or opinion about the case. However, the proper test is whether the prospective juror "can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U. S. 717, 723 (81 SC

1639, 6 LE2d 751) (1961); *Young v. State,* supra. In this case, each prospective juror not removed for prejudice expressly indicated that he or she could lay aside any opinion he or she had formed and render a sentence based solely upon the evidence. *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979); Irvin v. Dowd, supra; *Dick v. State,* supra; *Messer v. State,* 247 Ga. 316 (276 SE2d 15) (1981).

The record in this case shows that 67 prospective jurors were examined. Of this number, 6 jurors were excused for prejudice or a fixed opinion as to guilt or innocence. Nineteen persons had opinions of guilt but expressly stated that they could lay aside any opinion and render a verdict solely based upon the evidence. This low percentage of venirepersons excused for prejudice (approximately 8%) strongly corroborates the expressions of impartiality by the other jurors who were not excused for prejudice. *Messer v. State,* supra (8.3% corroborates an absence of prejudicial publicity); Murphy v. Florida, supra; *Tucker v. State,* supra (5% dismissal rate corroborates absence of prejudicial bias); *Collier v. State,* supra, (20% dismissal rate corroborates absence of prejudicial bias); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976) (46% dismissal rate corroborates an absence of prejudicial bias); *Butler v. State,* 231 Ga. 276 (201 SE2d 448) (1973) (cert. den. 420 U. S. 907 (1974)) (36% dismissal rate corroborates absence of prejudicial community bias).

Appellant also assigns as error the trial court's failure to admit the results of a public opinion poll conducted by the University of Georgia through the efforts of appellant's former attorney, a law professor. Appellant cites no authority for the admissibility of the opinion poll evidence.

The trial judge gave the appellant an opportunity to authenticate the poll. However, because the trial court required a list of persons contacted in the poll for in-camera inspection, to determine whether the jurors actually called had been prejudiced, appellant's witnesses refused to appear and testify. Refusal to testify was based on an ethical consideration about revealing the source of the poll. It must be noted that the members of one juror's family had in fact been contacted.

Appellant had at his disposal the means to require the witnesses to testify, no privilege being present, but failed to avail himself of these means. He cannot now complain.

Furthermore, even if the opinion poll had been tendered in evidence, the appellant would not have met his burden as to change of venue. The results of the poll simply corroborated the fact that the community was aware of the prior trial, and that based on that trial they had an opinion as to guilt or innocence and punishment.

However, 85% of those persons contacted noted that the appellant could get a fair trial in the community. Furthermore, the crucial question as to whether their opinions could be laid aside and the issues determined solely upon the evidence presented to the jury was never asked in the poll. And, while the question is not before this court, there are grave reservations about the admissibility of this type of evidence under any circumstance.

A motion for change of venue lies within the sound discretion of the trial judge. *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Coleman v. State,* supra. We find no abuse of discretion here.

3. Prior to trial, appellant challenged the arrays of the grand and traverse juries. The motion challenging the array of the grand jury was sustained, and appellant was reindicted. The trial court overruled the challenge to the array of the traverse jury, and in his fifth enumeration of error appellant contends that this ruling was erroneous because women were underrepresented on the traverse jury list.

In order to make out a prima facie case of jury discrimination, a defendant must establish (1) that a distinctive group or recognizable class in the community has been excluded from the jury list; (2) that an opportunity for discrimination against this group existed from the source of the jury list; and (3) that the use of the infected source produced a significant disparity between the percentages found present in the source and those actually appearing on the jury panels. See e.g. Duren v. Missouri, 439 U. S. 357 (99 SC 664, 58 LE2d 579) (1979); *Bowen v. State,* 244 Ga. 495 (260 SE2d 855) (1979) and cits.

At the hearing on the challenge, appellant called as a witness the former superior court clerk, and ex-officio member of the jury commission. No jury commissioners were called to testify. The witness testified to the following factual situation: Of the jury commissioners, two were black males, two white females, two were white males. The traverse jury panel last had been revised in August of 1979. The primary source from which the jurors were drawn was the voter's registration list. However, the list was supplemented by a list of graduating high school seniors and from cards received from persons wishing to be included in the traverse jury list, which resulted from publicity in the news media and public appearances by the clerk of the court requesting such participation. After it was determined by the commissioners that the voter registration list would leave an underrepresentation of blacks and women, the commissioners made an affirmative effort as provided for by Code Ann. § 59-106 to supplement the traverse jury list.

Appellant's statistical evidence consisted of a 1970 census showing the population of Bartow County to be 51.29% female;

48.7% male. The traverse jury list was 39.35% female; 60.64% male for a variance of 11.9%. However, evidence was presented that the county contained 1,564 females over the age of 65 and 1,125 males over the age of 65. A witness testified that many of the males over 65 had requested that their names remain in the box, while none of the females over 65 requested that their names remain in the box. The net effect, therefore, was that 1,564 females over the age of 65 were removed from the available pool of traverse jurors.

After the hearing, the trial judge overruled the jury challenge and in his order stated that there was no evidence of purposeful discrimination or systematic exclusion of any identifiable class; that there was no significant disparity between the percentages of the challenged class in the population and on the jury list, and that the witness who testified had adequately explained and given valid reasons for the variation between the percentages. The judge further found that many women with legal excuses other than being over the age of 65 had requested that their names be removed from the box.

We hold that the trial court was authorized to overrule appellant's jury challenge because appellant failed to show the disparity between the percentage of women in the population and on the traverse jury panel was significant. *Bowen v. State,* supra. Appellant concedes that a percentage below 11% is not significant. Furthermore, appellant has failed to show an opportunity for discrimination against a distinctive or recognizable class in the community existed from the source of the jury list. Rather, the evidence shows that because the voter registration list was not adequate, the jury commissioners made an affirmative effort to bring the percentage of the identifiable class within the tolerances required. Thompson v. Sheppard, 490 F2d 830 (5th Cir. 1974); Brooks v. Beto, 366 F2d 1, 24 (5th Cir. 1966).

Appellant further argues that the commissioners' bringing more women into the list after it was determined that they were underrepresented in the voter's registration list set a "target figure" and therefore discriminated. Brooks v. Beto, supra. He stresses the witness' testimony that more women could have been included. However, there must of necessity be a "target figure" to meet the cross section requirement. To say otherwise, that is, to blindly hope that the cross section requirement will be met, is to ignore the statute (Code Ann. § 59-106) and logic. The dicta in Brooks, relied upon by appellant, does not apply because it speaks of a system wherein target figures are employed *from the inception* of the jury selection process, not a system wherein a *remedy* is required for underrepresentation.

4. During voir dire, defense counsel in questioning a potential

juror, elicited the following responses: ". . . I want to ask you if you are in favor of the death penalty? Juror: Definitely in favor of it. Mr. Neel: . . . Would you always vote for it in a case where death had occurred? Juror: If there was proof of evidence, yes, sir, if the state law allowed it, yes, sir. Mr. Neel: In every case? Juror: In every case the law allowed it." Defense counsel then moved to strike the juror for cause on the basis of a converse of Witherspoon v. Illinois. The court then questioned the potential juror as follows: ". . . In hearing the evidence and the testimony delivered in court will you apply it to the law as given you in charge by the court. Juror: That's what I told him, sir. The Court: But you will abide by the law as given you in charge by the court? Juror: Certainly. I would have to." The court then denied the motion. Defense counsel then persisted in the line of questioning and asked, ". . . Would you always vote for the death penalty just blindly without even considering what the evidence would be? Juror: No, sir, I wouldn't, I didn't say that. Mr. Neel: You would consider what the evidence was? Juror: The facts. If there is a murder involved and it is the law, the State of Georgia required that the person could be put to death, I would vote for it. Mr. Neel: If the law required it? Juror: Yes."

In his sixth enumeration of error, appellant contends that the trial court erred by not striking a venireperson for cause. In order for a juror to be stricken for cause due to prejudice in favor of the death penalty, he or she must be irrevocably committed to impose the sentence of death regardless of the court's charge and no matter what the facts and circumstances of the case. *Hance v. State,* 245 Ga. 856, 864 (6) (268 SE2d 339) (1980). As in the case of jurors who are irrevocably committed against the death penalty, it is enough if the juror will consider all of the evidence and will determine whether to impose the death penalty or life imprisonment based upon the evidence presented as applied to the law given in charge by the court. *Hance v. State,* supra; *Westbrook v. State,* 242 Ga. 151, 154 (3) (249 SE2d 524) (1978).

In the instant case it is clear from the responses of the juror that he was not irrevocably committed to impose the sentence of death no matter what the facts and circumstances of the case or the court's charge; rather, that he would consider all of the evidence in light of the charge given by the court. The sentencing instructions of the court necessarily would require the juror to find any aggravating circumstance beyond a reasonable doubt, and to take into consideration mitigating circumstances. The court would specifically instruct the juror that the death penalty is *not* required by Georgia law in *any* case. The juror having responded that he would follow the law and evidence, we find no merit in this enumeration. *Westbrook v.*

*State,* supra.

5. In his seventh enumeration of error, appellant contends that the trial court's refusal to allow him to ask seven questions on voir dire curtailed his right to a thorough and exhaustive examination as contemplated by Code Ann. § 59-705.

We have examined each question and find no merit in this enumeration of error. Three questions dealt with the appropriate punishment should the defendant be found guilty, and with what the prospective juror thought probably had happened to the victim. These questions clearly called for a prejudgment of the case and are prohibited. *Waters v. State,* 248 Ga. 355 (283 SE2d 238) (1981); *Whitaker v. State,* 246 Ga. 163 (269 SE2d 436) (1980); *Patrick v. State,* 245 Ga. 417 (265 SE2d 553) (1979). The other questions sought to elicit information of a technical, legal nature on topics which properly were the subjects of instructions by the trial judge at the close of the evidence. They likewise are prohibited. *Wallace v. State,* 248 Ga. 255 (282 SE2d 325) (1981). Similarly, questions about the feelings of persons other than the prospective juror, or how those assumed feelings of other persons would affect a prospective juror, are not proper questions for voir dire. *Patrick v. State,* supra.

Code Ann. § 59-705 controls the permissible scope of voir dire. Voir dire should allow both parties an opportunity to ascertain the ability of the prospective jurors to decide the case on its merits. *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865) (1973). To that end, the control of voir dire examination is vested in the sound legal discretion of the trial judge and will not be interfered with by this court unless the record clearly shows an abuse of that discretion. *Waters v. State,* supra.

The last question prohibited by the trial court was a general question asking whether defense counsel had failed to touch upon any matter bothering any prospective juror which would make it difficult for him to serve. The record reveals that voir dire was extensive and prolonged. The trial judge's refusal to allow such a general question was a proper exercise in discretion to keep the voir dire within reasonable bounds. We find no merit in this enumeration of error.

6. After the state's opening statement, the trial court gave defense counsel the opportunity to make his opening statement. Counsel declined, and requested that he be allowed to make his opening statement at the conclusion of the state's case. The request was denied by the trial court, and appellant asserts error. This argument was raised in appellant's direct appeal and in his state habeas corpus appeal. In both instances, the question was decided adversely to him. The trial court relied on the rulings of this court in

the two previous appeals. We find no merit in this enumeration of error. *Berryhill v. State,* supra; *Berryhill v. Ricketts,* supra.

7. In his ninth enumeration of error, appellant contends that the trial court erred by refusing to permit sequestered voir dire. He argues that questioning the traverse jurors in the presence of each other could have resulted in bias or prejudice, although he cites no actual instances of bias or prejudice. The right to individual examination of jurors given by Code Ann. § 59-705 does not encompass isolated examination. Whether or not to allow individual questioning of jurors to take place outside the presence of the other jurors is a matter within the sound discretion of the trial court. *Whitlock v. State,* supra; *Stevens v. State,* 247 Ga. 698 (278 SE2d 398) (1981). There is no merit in this enumeration of error. *Messer v. State,* supra; *High v. State,* 247 Ga. 289 (276 SE2d 5) (1981).

8. In his tenth enumeration of error, appellant attacks the constitutionality of the Georgia Unified Appeal procedure. The constitutionality of the Unified Appeal procedure has been upheld by this court in *Sliger v. State,* 248 Ga. 316 (282 SE2d 291) (1981). Appellant advances nothing not heretofore addressed in that case. There is no merit to this enumeration of error.

9. In his eleventh enumeration of error, appellant contends that the trial court erred by limiting his aunt's testimony to her opinion of his mental competency at the time of the crime, and by allowing her only to give the reasons for her opinion as to his mental competency at that time.

We do not agree. The trial court allowed the witness to give her opinion about the mental competency of the appellant at the time of the alleged criminal act and also to give her reasons for her opinion, including facts concerning appellant's early childhood. The ruling merely precluded her *opinion* of his early childhood mental condition from being stated during the guilt-innocence phase of the case.

In his ruling the court specifically told defense counsel that such opinion evidence could be introduced in mitigation. This enumeration of error is without merit.

10. While imprisoned under the original death sentence imposed by the trial court in 1975, appellant was approached by Mr. Tex Fuller, a filmmaker. Mr. Fuller requested that appellant give an interview for the purpose of making a film on capital punishment. At that time, appellant was represented by a lawyer who was to handle his appeal. The appellant did in fact make the film, and during the film confessed to the entire crime.

The state introduced the testimony of Mr. Fuller, and appellant objected thereto, arguing that his Fifth and Sixth Amendment rights were violated, that he did not have assistance of counsel in making

the decision on whether to talk with Mr. Fuller, and that the statement was not voluntary in that he was on death row and under the opinion that if he confessed at that time it would make little difference to "future events."

The state presented evidence that Mr. Fuller was not connected in any way with any law enforcement agency, and that the interview was privately initiated. It must be noted that this is not a situation involving an undisclosed government informant, United States v. Henry, 447 U. S. 264 (100 SC 2183, 65 LE2d 115) (1980), or a court-ordered psychiatric examination. Estelle v. Smith, —— U. S. —— (101 SC 1866, 68 LE2d 359) (1981).

The state introduced evidence that no promises were made to appellant to induce his statement and the subsequent filmed interview. Neither was appellant coerced or threatened in any manner to force his participation in the filmed interview. The evidence supports a finding that appellant made a reasoned decision to participate in a film on capital punishment, and the trial court correctly concluded that the statement was voluntary. Statements made to parties which are not law enforcement officers or agents of the state do not require Miranda warnings. *Grogins v. State,* 154 Ga. App. 606 (269 SE2d 98) (1980). Nor does such an interview trigger an accused's right to counsel under the Constitution of the United States or the Constitution of the State of Georgia. Brewer v. Williams, 430 U. S. 387 (97 SC 1232, 51 LE2d 424) (1977), and Hoffa v. United States, 385 U. S. 293 (87 SC 408, 17 LE2d 374) (1966). "[F]ar from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable." United States v. Washington, 431 U. S. 181, 187 (97 SC 1814, 52 LE2d 238) (1977).

Moreover, during his testimony appellant admitted the facts concerning the homicide which were the subject of his filmed interview with the witness. We find no merit in this enumeration.

11. During the presentencing phase of the trial, the jury requested a replay of all the guilt-innocence phase testimony from the victim, her son and the defendant. The replay of testimony is within the sound discretion of the trial court. *Beasley v. State,* 239 Ga. 49 (235 SE2d 520) (1977). The trial court instructed the jury it should not place undue influence on the replayed testimony but should take it into consideration with the other testimony presented in the case.

In his thirteenth enumeration of error, appellant contends that the trial court erred in allowing the jury to hear the replay of the testimony because he did not receive notice from the state that this replayed testimony would be entered in aggravation during the sentencing phase of the trial. Code Ann. § 27-2503. We do not agree. This was not additional evidence as contemplated by the statute, but

was evidence already before the court and jury. The jury was specifically instructed to consider all of the evidence, both in the guilt-innocence and the punishment phases of the trial, in making a determination of sentence. The trial court did not abuse its discretion. This enumeration is without merit.

Also during the sentencing phase of the trial, the state introduced 34 prior convictions in aggravation. Appellant argues that these convictions were inadmissible because they did not contain his signature. However, the indictments and convictions named appellant, were signed by attorneys representing him, and were certified. Even now, appellant does not argue that these convictions did not apply to him. The court did not err in admitting the evidence of prior convictions.

12. In his fourteenth enumeration of error, appellant contends that the trial court erred in refusing to impose a life sentence after considerable jury deliberation and obvious jury deadlock as to the sentence.

A review of the record shows that the jury began its deliberations at 11:17 a.m. on Friday and deliberated until 2:25 p.m., when the request to rehear the testimony of the three witnesses discussed in division 11, was made to the court. The jury resumed deliberations at 5:45 p.m., and deliberated until 6:30 p.m., at which time the jury retired for dinner. The jury then deliberated for one more hour, until 9:00 p.m., before advising the court they were divided 10-2. The jury retired for the evening and returned the next day at 9:00 a.m. They reached their verdict at 2:55 p.m. Total jury deliberation time was 10 hours and 8 minutes. The trial lasted for 4 days. A review of the transcript indicates the jury never informed the court that they were hopelessly deadlocked and no dynamite charge was given or required. This enumeration of error is totally without merit.

13. In his fifteenth enumeration of error the appellant contends the trial court failed upon its own motion to grant a mistrial when the state, during cross-examination, asked the appellant about his prior criminal record. Prior to this time appellant, as part of his defense, introduced evidence of his prior criminal record. Pretermitting waiver in that defense counsel did not object, we find no error. *Dick v. State,* supra at p. 706; *Brown v. State,* 237 Ga. 467 (228 SE2d 853) (1976).

14. Appellant contends in his sixteenth enumeration of error that the trial court erred by refusing to grant a mistrial on its own motion due to highly inflammatory remarks made by the district attorney.

During cross-examination of the appellant, the state inquired into his employment status. The question asked was, "You worked in

a theater when you were a kid but after being an adult, say from 18 on up, did you ever hold a job in your life longer than 3 months?" The answer of the defendant was ". . . I was very lucky to even be out 3 months. No, sir, I didn't." The defense objected to this line of questioning on the grounds of relevancy, and in answering the court's inquiry as to how this was relevant, the district attorney stated, "I expect to show to this jury, through this defendant's testimony of his own, that he has done nothing other than steal and burglarize and rob for his whole life and kill . . ." The defense counsel objected to the last comment of the district attorney and asked for curative instructions. The trial court sustained the objection and gave the curative instructions as requested by defense counsel.

Appellant now argues that although the court honored his request for curative instructions, the remark of the prosecutor was so pronounced and persistent that it permeated the entire atmosphere of the trial. However, appellant placed his own character in evidence prior to this statement, and presented witnesses who testified that he had engaged in an endless stream of criminal activities since he was 14 years old and began sniffing glue. We do not find such remarks to be so prejudicial as to be incurable by instructions. *Dick v. State,* supra; *Thomas v. State,* 248 Ga. 247 (282 SE2d 316) (1981).

15. Appellant filed a general motion for funds which the court denied. However, in denying the motion, the court instructed counsel it would entertain motions for specific requests for funds, such as for interviewing out-of-state witnesses, if required. Appellant now contends, in his seventeenth enumeration of error, that the trial court erred in denying his general motion for funds. This enumeration is totally without merit. The providing of funds to an indigent defendant is within the sound discretion of the trial court, *Whitaker v. State,* supra. The trial court instructed the appellant he could obtain funds for specific purposes if needed and the appellant did not avail himself of this remedy. The appellant cannot now complain.

16. In his last enumeration of error, appellant asserts the cumulative effect of all of the errors alleged denied him a fair trial. After having reviewed the errors alleged and finding them to be without merit, this court also finds this enumeration to be without merit.

### Sentence Review

As required by Georgia Laws, 1973, p. 159 et seq., (Code Ann. § 27-2537 (c) (1-3)), we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury and the evidence concerning the crimes and the defendant pursuant to the mandate of the statute. We conclude that the sentence of death

imposed in this case was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

The jury found the following aggravating circumstance: The offense of murder was committed while the offender was engaged in another capital felony, to wit, armed robbery (Code Ann. § 27-2534.1 (b) (2)).

The evidence supports a finding of the aggravating circumstance by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

We have reviewed the trial court's charge to the jury and found it not subject to the defects dealt with in *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977), or in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977).

This court has independently reviewed the record as mandated by the Unified Appeal Procedure and has found no addressable error other than those enumerated by the appellant.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find that the following similar cases decided since *Berryhill v. State,* supra, listed in the appendix, and the cases listed in the appendix of appellant's original appeal, support the affirmance of the death penalty.

This was a cold-blooded killing of an unarmed victim in the full view of his wife and children for the sole purpose of financial gain. The victim was killed in the style of an execution after he had been wounded to the extent that he was helpless. His son was forced to lie down next to the victim as he died. The 19 cases in the appendix in which the death penalty was imposed support the death penalty in the instant case. All these cases involved the deliberate, unprovoked killing of a robbery victim or victims, and thus show the willingness of juries to give the death penalty under these circumstances.

The evidence supports a finding that the defendant had the intention to take a life. The appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 18, 1982 —
REHEARING DENIED JUNE 2, 1982.

*C. Stephen Cox, William A. Neel, Jr.,* for appellant.
*Darrell E. Wilson, District Attorney, Michael J. Bowers, Attorney General, George M. Weaver, Staff Assistant Attorney General,* for appellee.

APPENDIX.

*Smith v. State,* 249 Ga. 228 (290 SE2d 43) (1982); *Cunningham v. State,* 248 Ga. 558 (284 SE2d 390) (1981); *Cervi v. State,* 248 Ga. 325 (282 SE2d 629) (1981); *Thomas v. State,* 248 Ga. 247 (282 SE2d 316) (1981); *Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Solomon v. State,* 247 Ga. 27 (277 SE2d 1) (1980); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Cobb v. State,* 244 Ga. 344 (260 SE2d 60) (1979); *Baker v. State,* 243 Ga. 710 (257 SE2d 192) (1979); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976).