### S91P0607. JONES v. THE STATE.
(409 SE2d 642)

WELTNER, Justice.

Johnnie Dee Jones was convicted of murder in the stabbing of Randall Garvin Reeves. He was sentenced to death.[1]

1. (a) Jones claims error in the trial court's failure to grant his motion for a change of venue on the ground of excessive pre-trial publicity. In *Berryhill v. State,* 249 Ga. 442 (291 SE2d 685) (1982), we affirmed the trial court's denial of the motion for the change of venue. We held:

> Both this court and the Supreme Court of the United States have considered the "small-town syndrome" before. [Cit.] A serious case draws public attention, and hardly any prospective juror will not have formed some impression or opinion about the case. However, the proper test is whether the prospective juror "can lay aside his impression or opinion and render a verdict based on the evidence presented in court." [Cits.] [Id. at 443.]

(b) Examining the record in this case, however, we conclude that, under *Berryhill,* the trial court should have granted the motion for a change of venue.[2] Hence, the conviction and sentence is set aside, and

---

[1] The homicide occurred on July 28, 1988, and Jones was indicted for murder on July 29, 1988. He was found guilty of malice murder on July 1, 1990, and was sentenced on the same date. His motion for new trial was filed on July 30, 1990, amended on July 31, 1990, and denied on December 21, 1990. A notice of appeal was filed on January 16, 1991. The appeal was docketed on February 1, 1991, and argued on April 17, 1991.

[2] In *Berryhill,* supra, we found:
The record in this case shows that 67 prospective jurors were examined. Of this number, 6 jurors were excused for prejudice or a fixed opinion as to guilt or innocence. Nineteen persons had opinions of guilt but expressly stated that they could lay aside any opinion and render a verdict solely based upon the evidence. This low percentage of venirepersons excused for prejudice (approximately 8%) strongly corroborates the expressions of impartiality by the other jurors who were not excused for prejudice. [Id. at 444.]
In *this* case, the trial court examined 138 prospective jurors on voir dire, excused 30 for prejudice (21.7 percent) and qualified 57. Of the 57, 42 were impaneled. Thirty-eight of the 42 impaneled jurors had prior knowledge of the case; 12 had formed an opinion as to guilt;

the case is remanded for a new trial.

2. (a) The approach followed in *Berryhill* and our earlier cases concerning change of venue in death penalty cases is, we believe, too restrictive. Our inquiries have been laborious, and often have yielded what might appear to be distinctions without differences. The history of the noted "Alday murders"[3] demonstrates the agonies of retrials. We need a better and a surer rule.

(b) Accordingly, we announce a new standard.[4] Trial courts will order a change of venue for death penalty trials in those cases in which a defendant can make a substantive showing of the likelihood of prejudice by reason of extensive publicity.[5]

3. Other claims of error are without merit.[6]

---

seven had formed an opinion as to punishment; and 26 had heard discussions within the community.

We acknowledge the existence of other variables that might argue for a differing comparison. However, crediting each prospective juror with the best of good intentions, we note that this case demonstrates substantially a higher and more pervasive prior knowledge on the part of the venire than was reflected in *Berryhill*.

[3] In 1976, three men were tried for murdering five members of the Alday family in 1973. The convictions were affirmed by this court, but habeas corpus relief was granted by the federal court in 1985 and a change of venue granted because of pre-trial publicity. See *Coleman v. State*, 237 Ga. 84 (226 SE2d 911) (1976); *Isaacs v. State*, 237 Ga. 105 (226 SE2d 922) (1976), and *Dungee v. State*, 237 Ga. 218 (227 SE2d 746) (1976) (affirmance of death penalty as to Coleman, Dungee, and Isaacs); *Coleman v. Kemp*, 778 F2d 1487 (11th Cir. 1986) and *Isaacs v. Kemp*, 778 F2d 1482 (11th Cir. 1986) (grant of habeas relief to all three); *Isaacs v. State*, 257 Ga. 126 (355 SE2d 644) (1977) (reversal of trial court's denial of motion to recuse judge as to all three); *Isaacs v. State*, 257 Ga. 798 (364 SE2d 567) (1988) (affirmance of denial of several motions as to Isaacs); *Isaacs v. State*, 259 Ga. 717 (386 SE2d 316) (1989) (affirmance of death penalty as to Isaacs upon retrial).

In *Coleman v. State*, 237 Ga. 84, supra, this court affirmed the denial of the motion for change of venue under the following circumstances:

The record in this case shows that 106 prospective jurors were examined and that twenty of these were excused initially for personal reasons (children, health, hearing, etc.), leaving eighty-six prospective jurors. Of these nine were stricken for normal cause (seven for relationship to the victims or the prosecutors and two for unalterable opposition to the death penalty), leaving seventy-seven prospective jurors who were examined as to having formed or expressed an opinion and other matters. Thirty-eight of these were stricken on the defendant's motion for having fixed opinions as to the guilt of the accused. [Id. at 89-90.]

[4] This new rule will be effective on January 16, 1992, which is the date that this case appears in the advance sheets of the Supreme Court Reports.

[5] Upon hearing a motion for change of venue, the trial court may reserve ruling until after voir dire responses.

[6] (a) Jones claims error in the admission of a videotape of the crime scene, contending that it was inflammatory and cumulative of other evidence. There was no error. *Foster v. State*, 258 Ga. 736 (374 SE2d 188) (1988).

(b) Jones asserts error in the admission of a pre-trial statement, claiming that fatigue, hunger, and failure to warn him concerning the possibility of a death sentence should preclude use of the statement. He was given adequate *Miranda* warnings; the interrogation was halted at the first indications of fatigue; Jones did not complain of hunger during the interrogation. There is no error.

(c) Jones asserts error in the admission of a second statement on the ground that he did

*Judgment reversed and case remanded. All the Justices concur, except Smith, P. J., Bell and Hunt, JJ., who dissent.*

HUNT, Justice, dissenting.

I dissent from Divisions 1 and 2 of the majority opinion and from the judgment of reversal.

1. At least since the United States Supreme Court issued its opinion in *Patton v. Yount*, 467 U. S. 1025 (104 SC 2885, 81 LE2d 847) (1984), we have consistently held that a trial court's determination concerning the necessity for a change of venue is presumptively correct and may be overturned only if manifestly erroneous. See, e.g., *Devier v. State*, 253 Ga. 604 (4) (323 SE2d 150) (1984); *Isaacs v. State*, 259 Ga. 717 (15) (386 SE2d 316) (1989).

In this case, the trial court found that a fair and impartial jury could be empaneled in Lincoln County. Without reference to the presumption of correctness, the majority cites only *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982) in support of its reversal. Its only analysis is contained in a footnote pointing out that in *Berryhill* approximately eight percent of the venire were excused for prejudice while in this case almost 22 percent were excused.

However, we have upheld the trial court's denial of a change of venue in many death-penalty cases since *Berryhill* in which the excusals for cause resulting from pretrial publicity equaled or exceeded the percentages here. See, e.g., *Crawford v. State*, 257 Ga. 681 (2) (362 SE2d 201) (1987) (approximately 30 percent excused for prejudice); *Childs v. State*, 257 Ga. 243 (2) (357 SE2d 48) (1987) (approximately 24 percent excused for prejudice); *Curry v. State*, 255 Ga. 215 (2g) (336 SE2d 762) (1985) (22.1 percent excused); *Blanks v. State*, 254 Ga. 420 (1) (330 SE2d 575) (1985) (27.4 percent excused); *Devier v. State*, supra, 253 Ga. 604 (4) (21 percent excused); *Castell v. State*, 250 Ga. 776 (6) (301 SE2d 234) (1983) (22 percent excused).

In *Patton v. Yount*, supra, the United States Supreme Court stated:

There are good reasons to apply the statutory presumption of correctness to the trial court's resolution of . . . questions [of juror partiality]. First, the determination has been made only after an often extended *voir dire* proceeding designed specifically to identify biased veniremen. It is fair to assume

---

not receive additional *Miranda* warnings. There was no error. See *Mainor v. State*, 259 Ga. 803 (387 SE2d 882) (1990); *Newberry v. State*, 260 Ga. 416 (395 SE2d 813) (1990).

(d) The evidence was sufficient to enable a rational trier of fact to find Jones guilty of the offense of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

> that the method we have relied on since the beginning, [cit.], usually identifies bias. Second, the determination is essentially one of credibility, and therefore largely one of demeanor. . . . [T]he trial court's resolution of such questions is entitled to . . . "special deference." [Cit.] [Id. at 467 U. S. 1038 (footnotes omitted).]

The majority does not explain why the determination of the trial court in this case is not entitled to "special deference." I cannot agree that the voir dire examination demonstrates manifest error in the trial court's conclusion that Jones could obtain a fair trial in Lincoln County.

2. The "noted 'Alday murders' " and the "agonies of retrials" referred to by the majority do not justify its result. As noted in the federal opinions granting habeas relief to the Alday murder defendants, the authors applied a "presumed prejudice standard" because the record showed an inundation of inflammatory pretrial publicity so pervasive that it took the Eleventh Circuit Court of Appeals over 46 pages to summarize it. See *Coleman v. Kemp*, 778 F2d 1487, 1491-1537 (11th Cir. 1986). Nothing comparable occurred here. This simply is not one of those "rare" cases in which the presumed prejudice standard is applicable. See *Isaacs v. State*, supra, 259 Ga. 717, 726 ("As is noted in *Coleman*, the 'presumed prejudice standard is "rarely" applicable.' ")

3. The foregoing is sufficient to demonstrate that reversal is not warranted by our cases or by any federal cases. Reversal, then, can result only from the application of a new standard for change of venue to this trial. Even if a new rule is necessary or desirable (and I am not persuaded that it is either), we should not ambush the unsuspecting trial court which correctly relied on considerable state and federal precedent. Instead, we could simply amend the Unified Appeal Procedure, to apply prospectively, as we are authorized by law to do.

4. Finally, I doubt the new standard adopted by the majority will save labor, and I question whether its application will be more susceptible of yielding distinctions with differences than our present rules.[7] The new standard requires changes of venue in those death penalty trials "in which a defendant can make a substantive showing

---

[7] The new rule will create even more laborious inquiries unless trial courts are encouraged by it to grant changes of venue liberally. Then, of course, our involvement is lessened. Whether that is desirable is a matter of personal viewpoint. There are those who have long advocated the removal of *all* death penalty cases to "disinterested" circuits, to be tried by judges, lawyers, and jurors who have no association with the county in which the crime occurred. This idea may have much to commend it and, perhaps, underlies the majority's endorsement of the new rule as a step along that path.

of the likelihood of prejudice by reason of extensive publicity." How much of a showing is a "substantive" showing? What is a "likelihood" of prejudice? How much prejudice is enough? (For example, what if a defendant shows a strong likelihood of minimal prejudice? What if he shows a minimal possibility of strong prejudice?) How much publicity is "extensive?" None of this is explained in the majority opinion, and it seems obvious to me that no one will know what the majority's "standard" means until we apply it to cases. As the Attorney General argued:

> If the court is attempting to avoid potential future reversals by creating a new standard, then this new, amorphous "rule" unwittingly invites more errors by its lack of definition and precision.

5. I do not 'agree that this case should be reversed under our present standards concerning changes of venue. I am not persuaded of the necessity of a new rule. I disagree with the new rule we adopt. I would affirm the denial of Jones' motion for change of venue.

I am authorized to state that Presiding Justice Smith and Justice Bell join in this dissent.

DECIDED SEPTEMBER 23, 1991 —
RECONSIDERATION DENIED NOVEMBER 8, 1991.

*Jimmy D. Plunkett, John P. Wills,* for appellant.
*Dennis C. Sanders, District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf,* for appellee.