S97A0422. FREEMAN v. THE STATE.
(486 SE2d 348)

CARLEY, Justice.

A jury found Ronald Lupez Freeman guilty of felony murder while in the commission of an armed robbery. Although the State had sought the death penalty, the jury recommended life imprisonment. After the trial court entered a judgment of conviction and a life sentence, Freeman filed a motion for new trial. The trial court denied

the motion for new trial and Freeman appeals.[1]

1. Construing the evidence most strongly against Freeman shows the following: The victim was a Cobb County convenience store owner who was shot in the head and died shortly after being transported to the hospital. Two additional bullets were found in the walls of the store and several thousand dollars in cash and money orders were missing. Approximately one month after the murder, a friend of Freeman's reported to the police that Freeman had admitted shooting the victim. When the police arrested Freeman, he was armed with a revolver. A State firearms expert testified that one of the bullets found in the wall of the store was fired from Freeman's revolver and that it was "probable" that the bullet recovered from the victim's body also was fired from that weapon. Freeman was involved in other recent armed robberies of Cobb County convenience and fast food stores wherein store personnel were killed. See *Freeman v. State*, 268 Ga. 181 (486 SE2d 161) (1997); *Freeman v. State*, 266 Ga. 343 (467 SE2d 515) (1996). Freeman's accomplice in one of those recent similar crimes testified that Freeman had admitted killing the victim and stealing the cash and money orders. This evidence was sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt of Freeman's guilt of felony murder while in the commission of an armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Freeman enumerates as error the denial of his motion for a change of venue based upon pre-trial publicity. Such a change of venue is appropriate when "a defendant can make a substantive showing of the likelihood of prejudice by reason of extensive publicity." *Jones v. State*, 261 Ga. 665, 666 (2) (b) (409 SE2d 642) (1991). Although the extent and timing of the pre-trial publicity are factors in determining whether there has been such a showing, the decisive factor is the effect of the publicity on the ability of prospective jurors to be objective. See *Thornton v. State*, 264 Ga. 563, 574 (17) (449 SE2d 98) (1994).

Ninety-six prospective jurors underwent extensive voir dire. Although forty-one were excused for cause, only nine of them were excused because of the opinions they had formed as the result of exposure to pre-trial publicity. Thus, the percentage of prospective jurors excused for cause due to pre-trial publicity is half that found

---

[1] The murder occurred on January 20, 1992 and the grand jury indicted Freeman on December 4, 1992. The jury returned the guilty verdict on June 11, 1993 and the trial court entered its judgment of conviction and life sentence on June 12, 1993. Freeman filed his motion for new trial on July 1, 1993 and the trial court denied that motion on August 16, 1996. Freeman filed his notice of appeal on August 26, 1996 and the case was docketed in this Court on December 6, 1996. The case was submitted for decision on briefs.

problematical in *Jones*, supra. Moreover, every qualified prospective juror who had been exposed to pre-trial publicity stated that he or she could set that exposure aside and reach a verdict based solely on the evidence presented. Under these circumstances, we conclude that the voir dire does not reflect a "substantive showing" of the likelihood of prejudice by reason of extensive pre-trial publicity. Compare *Jones v. State*, supra.

3. Freeman urges that the trial court erred when it ordered him to provide the State with the names, addresses and written reports of all of his experts. Although the trial court's ruling in this regard was correct at the time it was made, we subsequently held in *Rower v. State*, 264 Ga. 323, 324 (5) (443 SE2d 839) (1994) that the State is entitled to only the written reports of experts which the defense intends to introduce at trial. Accordingly, the trial court's order was erroneously overbroad. See *Childress v. State*, 266 Ga. 425, 432 (3) (467 SE2d 865) (1996); *Johnson v. State*, 265 Ga. 833 (463 SE2d 123) (1995).

The error, however, must be harmful to be reversible. *Mobley v. State*, 265 Ga. 292, 294 (4) (455 SE2d 61) (1995). Freeman urges that, because the trial court erroneously ordered him to furnish an unfavorable report of his ballistics expert to the State, he was harmed by being required to call that expert as a witness at trial. The record shows, however, that the State relied entirely upon the testimony of its own ballistics expert to connect Freeman's revolver with the bullets. Although Freeman was certainly not compelled to do so, he thereafter elected to call his ballistics expert in an apparent attempt to counteract the testimony of the State's expert and, if Freeman failed in this attempt, it was not the result of the trial court's erroneous discovery order. Compare *Childress v. State*, supra. Since Freeman has shown no harm, the error does not warrant a new trial.

4. Freeman urges that the trial court's charge was erroneous because it failed to specify the appropriate standard of proof applicable to the similar crimes evidence. Freeman requested that the trial court give a charge that the State had the burden of proving his similar offenses "beyond a reasonable doubt." It was not error to refuse to give this request, since the similar offenses were not an element of any offense for which Freeman was being tried. *Wallace v. State*, 246 Ga. 738, 742 (5) (273 SE2d 143) (1980).

There is a wide split of authority as to the proper standard of proof for similar crimes, with jurisdictions traditionally opting between three different standards. Although a few jurisdictions do appear to apply the "beyond a reasonable doubt" standard, the prevailing view is that the "clear and convincing evidence" standard applies, but support for that standard is eroding and a significant minority of jurisdictions now applies the "preponderance of the evi-

dence" standard. Imwinkelried, Uncharged Misconduct Evidence, § 2:08. In *Williams v. State*, 251 Ga. 749, 755 (4) (312 SE2d 40) (1983), we held that the State is required to show "sufficient evidence tying [the defendant] to the perpetration of the independent crimes. . . ." Although we did not explicitly define "sufficient evidence," it is clear from a review of the strongly worded dissent of Justice Smith that "sufficient evidence" is certainly a lesser standard than "clear and convincing evidence." *Williams v. State*, supra at 816 (1) (b) (2) (dissent of Justice Smith). According to Justice Smith, the applicable standard was "clear and convincing" and the majority incorrectly found evidence of other crimes to be admissible under a theory which was "at odds with the rule of evidence which requires clear proof of the accused's commission of each and every extrinsic offense." *Williams v. State*, supra at 817 (1) (b) (2) (dissent of Justice Smith).

If the applicable standard of proof is less than "beyond a reasonable doubt" under *Wallace*, supra, and less than "clear and convincing evidence" under *Williams*, supra, then the applicable standard of proof in Georgia would appear to be a "preponderance of the evidence." This standard is consistent with persuasive authority from the Supreme Court of the United States. *Huddleston v. United States*, 485 U. S. 681, 687, fn. 5 (108 SC 1496, 99 LE2d 771) (1988) clearly holds that the admissibility of similar crimes is dependent upon a preliminary showing by a "preponderance of the evidence," rather than a showing by "clear and convincing evidence." The authority from other jurisdictions supporting the "clear and convincing evidence" standard is certainly no more persuasive than a decision of the Supreme Court of the United States. Although the proponents of the "clear and convincing evidence" standard have criticized *Huddleston*, support for the "clear and convincing evidence" standard nevertheless has weakened as courts in various jurisdictions have shifted to *Huddleston*'s "preponderance of the evidence" standard. Imwinkelried, Uncharged Misconduct Evidence, § 2:08. Moreover, despite the criticism leveled at *Huddleston*, the Supreme Court has continued to apply the preponderance standard. *Estelle v. McGuire*, 502 U. S. 62, 74 (II) (112 SC 475, 116 LE2d 385) (1991). "[W]e find 'nothing to suggest that admissibility rulings have been unreliable or otherwise wanting in quality because not based on some higher standard.'" *Bourjaily v. United States*, 483 U. S. 171, 175-176 (107 SC 2775, 97 LE2d 144) (1987) (cited with approval in *Huddleston v. United States*, supra at 687, fn. 5). Accordingly, we adhere to the "preponderance of the evidence" standard for the admission of similar crimes evidence which was implicitly adopted in *Williams*, supra. See also *Smith v. State*, 267 Ga. 363, 364 (2) (478 SE2d 379) (1996); *Freeman v. State*, 266 Ga., supra.

In a criminal case, the trial court is not required to give an unrequested charge as to any collateral matter and the manner in which the jury should consider the testimony of witnesses is a collateral matter. *Burger v. State*, 245 Ga. 458, 459 (1) (265 SE2d 796) (1980). It has long been the rule in this state that a request to charge must be correct, even perfect, and that it must also be legal, apt, precisely adjusted to some principle involved in the case and be authorized by the evidence. *Kessel v. State*, 236 Ga. 373, 374 (2) (223 SE2d 811) (1976). See also *McCoy v. State*, 262 Ga. 699, 701 (3) (a) (425 SE2d 646) (1993); *Hill v. State*, 211 Ga. 683, 685 (4) (88 SE2d 145) (1955); *Key v. State*, 211 Ga. 384, 385 (5) (86 SE2d 212) (1955); *Lewis v. State*, 196 Ga. 755, 760 (3) (27 SE2d 659) (1943). Because Freeman did not request a charge that his similar crimes be proven by a "preponderance of the evidence," there was no error in the trial court's failure to give such an unrequested charge.

*Judgment affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Sears, J., who concur specially.*

BENHAM, Chief Justice, concurring specially.

Although I concur in the judgment of affirmance and in the first three divisions of the majority opinion, I write separately to express my conviction that the "preponderance of the evidence" standard adopted by the majority in this case is not appropriate to the trial of criminal cases, and that the "clear and convincing evidence" standard should be adopted. I am able to concur only because I conclude that the extrinsic crimes evidence offered in this case was sufficient to meet not only the "clear and convincing evidence" standard, but even the more stringent "beyond a reasonable doubt" standard, rendering the failure to charge harmless.

I concur with the majority in rejecting Freeman's argument that the proper standard of proof is the "beyond a reasonable doubt" standard and that the absence from his trial of an instruction to apply that standard to the evidence of an extrinsic crime relieved the State of its burden to prove every element of the charged offense beyond a reasonable doubt. However, I do not believe the "preponderance of the evidence" standard adopted by the majority is adequate in a criminal case.

In *Devier v. Zant*, 3 F3d 1445, 1467 (11th Cir. 1993), the Eleventh Circuit discussed the importance of a standard of proof:

The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of

adjudication." The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision. [Cits.]

That rationale supports our rejection of the "beyond a reasonable doubt" standard in that the decision whether the extrinsic crime has been proved sufficiently for the jury to consider it on the issue of the defendant's identity is relatively less important than the ultimate decision to be made by the jury, guilt or innocence. However, as Justice Smith noted in his dissent in *Williams v. State*, 251 Ga. 749, 816 (312 SE2d 40) (1983), "[a] relatively high standard of proof is necessary because of the questionable relevancy of other crimes evidence and its devastating effect on a defendant's case." In addition, "preponderance of the evidence" is particularly inappropriate for an evidentiary standard in a criminal case because the word "preponderance" is basically a word of comparison, referring to superior numbers or weight. The phrase suggests that the defendant has some burden of proof, some burden of coming forward with evidence which would preponderate over that presented by the State. The preferable standard, which gives appropriate protection to the rights of an accused without unduly burdening the prosecution, is the "clear and convincing evidence" standard. As is noted by Edward J. Imwinkelried in Uncharged Misconduct Evidence, § 2.08 (1992 & Supp. 1997) (cited by Presiding Justice Fletcher in his concurrence in *Freeman*, 266 Ga. at 345), a majority of states who have considered the issue have adopted some version of the "clear and convincing" standard. This Court's adoption of the lesser standard of "preponderance of the evidence" in this case moves Georgia from the undecided category into a minority of jurisdictions who permit the use of extrinsic crime evidence on so slight a standard of proof.

In addition to disagreeing with the specific standard adopted by the majority, I must disagree with the rationale given for finding no error. Freeman's enumeration of error raising these issues was not that the trial court failed to give the specific charge Freeman wanted ("beyond a reasonable doubt"), but that the trial court failed to give any standard at all, and that the failure was due to the absence of an established standard. The very process of reasoning employed by the majority (the standard is not "beyond a reasonable doubt," and is less than "clear and convincing," so it must be "preponderance of the evidence") demonstrates that there was no applicable standard. The error asserted by Freeman was the trial court's failure to give the jury any standard at all, and that error is not resolved by invoking boilerplate language about the precision with which jury charges must be requested. Instead, the error should be considered by means of the following "harmlessness" analysis.

The specific extrinsic crime evidence of which Freeman complains here is eyewitness identification of appellant as the perpetrator of the crimes at both fast food restaurants; testimony linking the gun with which appellant was armed at the time of his arrest with bullets found on or in the victims of the other two fatal armed robberies; the testimony of appellant's accomplice and another friend relating appellant's admission to them that he had committed the other crimes; and the similar method of operation used in each case: entering the establishment at night when no other customer was present; making a small purchase; shooting the cash register attendant when the sale was rung up and the cash drawer open; leaning over the counter to grab currency from the exposed drawer; and fleeing the premises. The testimony presented with regard to each extrinsic crime was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was the perpetrator of that crime. See, e.g., *Chastain v. State*, 260 Ga. 789 (400 SE2d 329) (1991); *Williams v. State*, 251 Ga. 749 (4) (312 SE2d 40) (1983); *Rector v. State*, 213 Ga. App. 450 (1) (444 SE2d 862) (1994). The evidence being sufficient to meet the "beyond a reasonable doubt" standard, it was perforce sufficient to meet the lower "clear and convincing" standard. It is highly probable, therefore, that the error in failing to charge on the standard of proof did not contribute to the judgment of conviction and is, therefore, harmless. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

Accordingly, although I lament the choice of standard of proof adopted by the majority in this case, and believe the trial court's failure to charge on any standard to be error, I conclude that no reversible error has occurred. For that reason, I concur in the judgment of affirmance.

I am authorized to state that Presiding Justice Fletcher and Justice Sears join in this special concurrence.

DECIDED JUNE 30, 1997 —
RECONSIDERATION DENIED JULY 11, 1997.

*Antoinette D. Johnson*, for appellant.
*Thomas J. Charron, District Attorney, Nancy I. Jordan, Debra H. Bernes, Russell J. Parker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.