S97A0421. FREEMAN v. THE STATE.
(486 SE2d 161)

BENHAM, Chief Justice.

This appeal is from Ronald Lupez Freeman's conviction of murder and armed robbery.[1] The evidence at trial showed that a person

---

[1] The crimes were committed on March 21, 1992, and Freeman was arrested on March 31 and indicted on June 25, 1992, for malice murder and felony murder in one count, and armed robbery in a second count. A trial commencing January 23, 1995, concluded on February 7, 1995, with a verdict of guilty on all charges. The jury recommended life imprisonment and Freeman was sentenced accordingly. A motion for new trial filed February 15, 1995, and amended February 28, 1996, was denied on August 16, 1996. Freeman's notice of appeal was

who was identified by two eyewitnesses as Freeman ordered food at a Burger King restaurant and handed money to the person behind the counter; that when the restaurant employee opened the cash register, Freeman shot him in the chest, reached into the cash register and took money, then fled; that Freeman told his accomplice, who was waiting outside in a car, that he had shot someone; that Freeman was arrested later in possession of the gun which fired the fatal shot; and that Freeman had committed another robbery of a Burger King restaurant in essentially the same fashion, though no one was shot during that armed robbery.

1. In his first enumeration of error, Freeman complains of the trial court's denial of his challenge to the State's use of peremptory strikes, which Freeman contends were used in a racially discriminatory way in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Specifically, he complains that the reasons given for striking two African-American members of the panel, although facially race-neutral, were shown not to be race-neutral because the same reasons applied to non-African-American panel members who were not stricken.

Freeman is correct that "[a] prosecutor's failure to explain the apparently disparate treatment of similarly situated white and black jurors . . . diminishes the force of [the] explanation for striking a black juror." *Ford v. State*, 262 Ga. 558, fn. 1 (423 SE2d 245) (1992). However, our review of the record does not support his contention that the reasons given were not applied to similarly situated jurors of other races.

One of two reasons given for striking one African-American venireperson was that she had stated on voir dire that difficulties associated with childcare arrangements would create a hardship for her. Freeman points out correctly that two other venirepersons of other races were not stricken from the jury even though they, too, sought hardship exemptions because of a need to care for family members. However, one of those venirepersons later stated that her difficulty had been resolved by the cooperation of the manager of the personal care facility where the venireperson's mother resided. The other venireperson involved did not report any resolution of his potential hardship, but had other features which distinguished him from the stricken venireperson and made him more favorable to the State: he had previously served on the grand jury and was, from that experience, familiar with the district attorney. See *Greene v. State*, 266 Ga. 439 (5) (469 SE2d 129) (1996).

filed on August 26, 1996; the case was docketed in this Court on December 6, 1996; and the appeal was submitted for decision on the briefs.

The other reason given by the State for striking that venireperson was that identification would be a major issue in this case and the venireperson testified that she had been the victim of a crime and would have had difficulty identifying the perpetrator of that crime had he not been apprehended at the scene. Freeman asserts that the invalidity of that reason is shown by the fact that another venireperson of another race was not stricken although he had been the victim of a crime in which he saw the perpetrator's face, but stated that he would have had difficulty in making the identification. However, while the stricken venireperson stated that she concentrated on the criminal for identification purposes but still doubted she could have identified him, the other venireperson who expressed doubt that he could have identified the perpetrator of the crime against him was in different circumstances: the crime was a robbery at a company event at which the venireperson was the senior employee present who felt responsible for the other employees and concentrated not on the masked criminals, but on the safety of the other employees, and saw the face of one of the robbers only briefly while that robber held a gun to the venireperson's head and threatened him. Under those circumstances, we agree with the trial court's assessment that the other jurors to whom Freeman compares the stricken African-American venireperson were not so similarly situated as to diminish the force of the explanations given for the strike. Compare *Ford,* supra.

The State explained the peremptory challenge of another African-American panel member by reference to his opposition to the death penalty. Freeman contends that at least two other panel members who were not African-Americans gave similar responses to questions regarding the death penalty without being struck. Our review of the transcript of voir dire persuades us otherwise. The African-American panel member, although he agreed that he could consider the death penalty if instructed to do so, would not state that there were any circumstances under which he would vote for it. The other two panel members to whom Freeman compares the African-American panel member who was struck both expressed some hesitation about the death penalty, but both concluded that there were circumstances under which they could vote for the death penalty. The difference in the responses regarding the death penalty were sufficient to differentiate the other two panel members from the one who was struck and to support the trial court's conclusion that those panel members were not so similar to the one who was struck that the force of the facially race-neutral explanations was diminished. We find no error in the trial court's rejection of Freeman's *Batson* challenge.

2. The indictment charging Freeman with the crimes involved here was drawn in two counts, the first charging him with malice murder and felony murder, and the second charging him with armed

robbery. The jury found him guilty of all charges, specifying in its verdict that it found him guilty of malice murder and felony murder under the first count. Freeman now contends that the trial court erred in instructing the jury that it must have a unanimous verdict as to each count as opposed to a unanimous verdict as to each crime charged. His argument is that absent such a specific instruction, the verdict finding Freeman guilty of both malice murder and felony murder is ambiguous.

A review of the record reveals that the trial court told the jury that it could find Freeman guilty of malice murder or felony murder or both or neither. The jury was clearly instructed on the permissible forms of the verdict, forms which included verdicts on both malice murder and felony murder. In its instructions on Count One, the trial court was clear on the requirement of reaching a verdict regarding each form of murder. Thus, when the trial court instructed the jury that it must be unanimous in its vote on Count One, the unmistakable meaning was that it must reach a unanimous verdict as to each form of murder. The charge here, viewed as a whole (see *Roker v. State*, 262 Ga. 220 (4) (416 SE2d 281) (1992)), made clear the requirement for a unanimous verdict as to each crime charged and was not erroneous.

3. Freeman's complaint that the jury instruction regarding consideration of evidence of extrinsic crimes erroneously failed to provide the jury with a proper standard by which to measure that evidence is controlled adversely to him in *Freeman v. State*, 268 Ga. 185 (4) (486 SE2d 348) (1997).

4. The trial court denied Freeman's motion for a change of venue because of pretrial publicity. This Court held in *Jones v. State*, 261 Ga. 665 (2) (409 SE2d 642) (1991), that a defendant in a death-penalty case would be entitled to a change of venue upon making "a substantive showing of the likelihood of prejudice by reason of extensive publicity." In *Thornton v. State*, 264 Ga. 563 (17) (449 SE2d 98) (1994), we noted as important factors to consider, the number of venirepersons exposed to pre-trial publicity, the number exposed who could remember the publicity at the time of trial, and the number of venirepersons who had formed an opinion regarding the defendant as a result of the publicity. It is clear from that case that the extent and timing of the publicity are factors, but the decisive issue is the effect of the publicity on the venireperson's ability to be objective. See *Freeman v. State*, 268 Ga., supra at (3).

In this case, 103 prospective jurors were examined. Of those, the majority reported no exposure to news related to this case; only 40 said they were exposed to pre-trial publicity or knew members of the victim's family. Of those forty, only nine were excused because of the effect on them of the pre-trial publicity or of acquaintance with the

victim's family. Thus, less than ten percent of the venire was excused on that basis, half the level of excusal found acceptable in *Davis v. State*, 263 Ga. 5 (5) (426 SE2d 844) (1993). Of the venirepersons exposed to publicity who were ultimately selected as jurors, Freeman complains about only one, asserting that she never stated that she could put aside any opinion formed on the basis of pre-trial publicity. Based on our review of the record, we note first that Freeman did not seek to excuse that juror for cause, and second that the juror indicated that she had formed an initial opinion based on the publicity, but had not thought about it, and that she could put that opinion aside. We conclude that the record of the voir dire in this case does not contain a substantive showing that pre-trial publicity created a likelihood of prejudice. Compare *Jones*, supra.

5. Finally, Freeman contends that the evidence adduced at trial was not sufficient to support his conviction. The testimony of two eyewitnesses that Freeman committed the robbery and the murder, together with the corroborated testimony of an accomplice and forensic evidence was sufficient to authorize a rational trier of fact to find Freeman guilty beyond a reasonable doubt of the offenses with which he was charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Greene v. State*, 263 Ga. 466 (2) (435 SE2d 607) (1993).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 30, 1997 —
RECONSIDERATION DENIED JULY 11, 1997.

*Antoinette D. Johnson,* for appellant.

*Thomas J. Charron, District Attorney, Nancy I. Jordan, Debra H. Bernes, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.